IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

### AT JUNE TERM, 1873.

THE PROPRIETORS OF THE MORRIS AQUEDUCT ADS. SAMUEL JONES.

1. When the words of a statute, directing the mode or time of doing an act, are clear, the provision cannot be deemed merely directory, unless the literal interpretation will lead to a result so absurd or highly inconvenient as to demonstrate that such could not have been the legislative intent.

2. A statute giving an appeal from the award of commissioners to the first or second term of the Circuit Court after such award, required a notice of such appeal to be given "two weeks prior to such term"— *held*, that this provision must be strictly complied with.

3. *Held further*, that such notice was not regulated by the supplement to practice act, passed 14th March, 1873.

The defendant was incorporated in 1799 for the purpose of supplying the inhabitants of Morristown with water. By a supplement passed on the 17th of February, 1862, power was conferred to extend its works, and provision was therein made, in case the requisite lands and materials could not be obtained by agreement, to have the damages assessed by com-

206

Proprietors of Morris Aqueduct ads. Jones.

missioners in the usual form. Section fifth contains the clause following, viz. : " That if either party feel aggrieved by said assessment and award, such party may appeal to the next or second term of the Court of Common Pleas of said county by petition, and notice thereof served upon the opposite party two weeks prior to such term, or published a like space in a newspaper published at Morristown, which petition and notice so served and published shall vest in said court full power to hear and determine said appeal, &c." By the further supplement passed April 3d, 1872, the appeal just mentioned is directed to be made to the Circuit Court of the county instead of to the Court of Common Pleas.

In the present case an assessment was made in August, 1872, and Mr. Jones, the petitioner, appealed therefrom to the Circuit Court of the county of Morris, at the second term thereafter, which began on the 21st day of January, 1872. On that day a motion being made in court to entertain said appeal and award a venire for a jury, such motion was opposed by the counsel of the proprietors of the Morris aqueduct, on the ground that the notice of appeal required by the supplement, already referred to, had not been given. It appearing that the notice in question had been served on the 13th of January, 1873, the court made no adjudication, and on the 28th of the same month, the motion was renewed. On that occasion it was shown that on the 21st of January, 1873, a second notice had been given, signifying that this motion of the 28th would be made.

The question thus presented being deemed by the court one of difficulty, was certified for the advisory opinion of this court.

Argued at February Term, 1873, before BEASLEY, Chief Justice, and Justices DEPUE and VAN SYCKEL.

For the motion, *J. Vanatta.*

Contra, *H. C. Pitney.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.　Whether the notice of appeal from the award of the commissioners appointed to assess the value of the land of the petitioner and his damages, is sufficient, is the point in dispute.　The statute in question declares that the party aggrieved by such award may appeal to the "next or second term of the court," and that notice thereof shall be served "upon the opposite party two weeks prior to such term."　The appeal in this case was made to the first day of the second term, a notice thereof of one week having been given ; but such course being perceived to be erroneous, the matter was laid over for a week, another notice being given conformably to this adjournment.　The case therefore, is presented of an appeal to a special day in term, and a notice thereof running back two weeks prior to that time.　But I think it is very clear that this is not a compliance with the statute authorizing this proceeding.　This act directs that the appeal shall be to the first or second term of the court occurring after the award, and under the force of this provision, no reason appears why the petition might not be presented on any day during such term.　But the notice of such appeal, with respect to time, is fixed with entire certainty and precision.　The statutory provision is, that it must be served on the opposite party "two weeks prior to such term," that is, the term to which the appeal is addressed.

It is impossible to draw in question the meaning of this language.　The notice in the case before the court was two weeks prior to the date of the application, but as it was not two weeks prior to the term at which such application was made, it is indisputably clear that the statute in this particular has not been complied with.

Upon the argument before the court, an effort was made, on two grounds, to avoid the effect of this clear statutory expression.　The first position taken was, that the legislative direction, with respect to the time for which notice of the appeal is to be given, is not mandatory, but merely directory.　There have been a number of decisions which have, under special circumstances, held that neither the exact time

nor the exact mode prescribed by statutes for the doing of acts directed to be done, is necessarily essential to the validity of the transaction. Upon looking into the cases referred to, and on an examination of others standing in the same line, I find they all rest upon the common principle that the legislative will is to be ascertained not from the meaning of the text of the statute alone, but from such words interpreted in view of the general object of the particular act. The adjudications are the results, not of acts of interpretation, which is the mere finding of the true sense of the special form of words used, but of acts of *construction*, which Dr. Lieber, in his Hermeneutics, has properly defined as " the drawing of conclusions respecting subjects that lie beyond the direct expression of the text—conclusions which are in the spirit, though not within the letter of the text." *Lieber on Political Hermeneutics, ch.* 1. In the class of cases now under consideration, the absolute meaning of the terms employed have been for the most part clear; but in their application to the subject matter, or in view of the paramount object of the lawmaker, they have been deprived of some of their usual force and restricted in their operation. Such results have obtained because it has appeared to the courts, looking at the statutory language and its effect, that it was manifest that it could not have been the design of those who enacted the law, to give the words the very power which they inherently possess. When an act is authorized or directed to be done by a written law, and the time and modes of doing such act are declared, it must, of necessity, oftentimes, be a question, in each particular instance, whether the time or mode so declared was so material in the eyes of the lawmaker, that he has made either an indispensable part of the affair. This idea is expressed by Lord Mansfield in the case of *Rex* v. *Loxdale*, 1 *Burr*. 447, in which he says: " There is a known distinction between circumstances which are of the essence of a thing required to be done by an act of Parliament, and clauses merely *directory*." What has been made a matter of the essence of the thing, can be ascertained only by judicial construction. In

some cases it is palpably clear, that time or mode is not essential. Thus this court properly maintained in *Morrel* v. *Buckley, Spencer* 668, that the provision requiring the clerk on issuing a writ of attachment, to enter in a book to be kept for that purpose, the names of the parties and the time of issuing and sealing the writ, was merely directory. The ground of that judgment is, that although the duty imposed on the clerk is expressed in clear terms, it could not have been the design to make the legality of the proceedings depend on the obedience of the officer to this mandate. The inconvenience and unjust consequences of such a circumstance would have been so great as to forbid the court from concluding that such a purpose was intended, in the absence of express terms, or something equivalent compelling to such a conclusion. This is an illustration of the plain text, being controlled by the plain spirit of the law.

The case of *The City of Lowell* v. *Hadley*, 8 *Metc.* 195, affords a similar illustration. The city ordinance required the superintendent of streets to make a report to the auditor of accounts, of the expense incurred in building a sidewalk, " within ten days from the finishing of the sidewalk," and the result reached was, that the provision was simply directory. A regulation that if the report of the officer was not made within the period specified, the city should lose the expenses incurred by it, would have been preposterous, and hence the refusal so to interpret the general command of the law. These cases, and many others of a like kind, rest upon a sure foundation. They are examples of judicial rejections of the letter of the act to prevent it running into absurdity. Some of the cases seem to me to have been pushed to an extreme, and have decided that circumstances were non-essentials, which appear to have been of the very essence of the particular transaction. But the rule being so general, it is hardly surprising that the results, each conclusion resting on peculiar grounds, should not be able to give universal satisfaction. However this may be, I am sure that the following proposition is established by the large majority of these

authorities, viz. : That every requirement of the act must have the full effect the language imports, unless such interpretation of the words will lead to great inconvenience, injustice, or a subversion of some important object of the act.

Judging the question now considered by this text, it is clear that the petitioner cannot stand on the ground assumed by him. It has been already said, that the language of this provision in question is too plain to admit of discussion. The right of appeal is given, but it is limited by two conditions : First, it must be made to the first or second term of the court ; and, second, a notice of such appeal must be given two weeks before such term. These restrictions upon the right are reasonable ; they harmonize with the general scheme of this law, and they lead to no inequitable result. On what ground can they be dispensed with ? If the time for notice can be disregarded, so also can the time in which the appeal is required to be made. It is obvious, that if it should be declared that this provision is merely directory, that it simply suggests a convenient mode of proceeding, carrying with it no mandatory force, no rule whatever exists, either as to the time of appealing or of giving notice. Such a conclusion has the effect of entirely abolishing the requirement in question ; plain language aiming at a reasonable purpose, is not permitted to operate at all. I find no precedent for such a determination, and it seems opposed to all rational rules of statutory construction. The first ground should, I think, be overruled.

A second point remains to be considered : A statute purporting to be a supplement to the practice act, was passed on the 14th of March, 1873, and it is contended that this law having a retrospective operation, validates the notice of appeal which has been given in the present case.

In the learned and able brief of the counsel of the aqueduct company, the broad position is taken, in answer to the position just indicated, that this statute, if it has the retroactive effect ascribed to it, is void, on the ground of its unconstitutionality. It is insisted, that on the running out

of the time limited for the appeal and notice, the rights and obligations acquired or imposed by the award of the commissioners, became vested and absolute, and that, therefore, they cannot be disturbed or impaired by legislative action. Many cases of the utmost weight are cited, which appear to fully sustain that proposition. It certainly is a formidable suggestion, that after a right has become perfectly and ultimately established under the existing forms of law, that the law making power can, at its pleasure, throw the subject open to a further litigation. If this be lawful, it is obvious that it is difficult to say what adjudication becomes final. To say the least, my prepossessions are opposed to such a theory, but the question is one of great importance, and has never been in its present form before our courts, and should not, consequently, be decided except when the particular case renders such a course necessary. Such an emergency does not seem to me, at present, to exist, because, according to my construction of the law in question, it has not a retrospective operation with respect to the point in controversy. The language of this act is as follows : " That in any and every case where proceedings have been, or shall be taken by any private corporation authorized to exercise or use the right or power of eminent domain, to exercise or employ that right or power to acquire any lands, tenements, &c., and an appeal has been or shall be taken from the award of commissioners, and notice is required by the charter of such corporation to be given of the presentation of the petition, or of the making of the application to the appellate court to enter an appeal, five days' notice of the presentation of such appeal, or of the making of such application served upon the opposite party, in case of an individual, personally, or left at his or her usual place of abode ; or, in case of a corporation, by delivering the same to the president, secretary, or treasurer thereof, personally, or leaving the same at the principal office of the company, &c., shall be sufficient notice and sufficient service thereof."

That this act provides for notice in case of appeals, which

should be taken in the future, and those which had been theretofore taken, is very clear; but this circumstance does not in the least settle the question in dispute, which is, whether it relates to a notice of appeal which had been given before its enactment. I have not found a word in this act manifesting such a purpose. The entire clause relating to the notice denotes future action. In case of a corporation, the declaration is, that five days' notice served "by delivering the same, &c.," "or leaving the same at the principal office, &c.," shall be sufficient. The expression, served by delivering, or by leaving, cannot, without distortion, be made to mean a thing already done; in their natural and enforced sense, the terms signify the reverse. To give the section the force contended for, would require to reverse the legal rule of construction, which enjoins every reasonable endeavor so to interpret the statutory text, as to give the law a prospective and not a retroactive effect.

I think the Circuit Court should be advised to dismiss this appeal, on the ground that the notice thereof was not given within the time prescribed by the statute.

Judgment affirmed, 8 *Vr.* 556.

CITED in *Douglass* v. *Chosen Freeholders of Essex Co.,* 9 *Vr.* 214; *City of Elizabeth* v. *Hill,* 10 *Vr.* 555; *Williamson* v. *N. J. South. R. R. Co.,* 2 *Stew. Eq.* 311; *Ellison* v. *Lindsley.* 6 *Stew. Eq.* 258; *Boylan* v. *Kelly,* 9 *Stew. Eq.* 331.