CYRUS G. FREEMAN ET AL., RESPONDENTS, v. JOHN C. CONOVER, APPELLANT.

Submitted July 5, 1920—Decided November 15, 1920.

1. When once the statute of limitations has begun to run against a person under no legal disability, it pursues its course uninterrupted by any subsequent event.
2. The statute of limitations contains various express exceptions from the operation of its provisions, and when the legislature itself has expressly provided what facts shall take a given case out of a statute, courts of law are not permitted to engraft upon it other exceptions not contained therein.
3. The statute limiting the time within which actions shall be brought is for the benefit and repose of individuals and not to secure general objects of policy or morals, and its protection may be waived by those who assent in legal form.
4. The legislature has not seen fit to except from the operation of the statute of limitations cases where the party against whom the statute normally runs has been induced by the fraudulent conduct of his adversary to postpone the bringing of his suit until after the statutory period has elapsed, and courts of law are not justified in reading into the statute such an exception.

On appeal from the Essex County Circuit Court.

For the appellant, *J. Howard Conover.*

For the respondents, *Davis, Perry & Grosso.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The material facts found by the jury in this case are as follows: In March, 1906, one Isaac Williams was the owner of eighty shares of stock of the United Water Supply Company. At that time he delivered these certificates to the defendant, Conover, as collateral security for a debt which he owed him. A year later Williams assigned this stock to George Freeman upon condition that the latter should pay the debt to secure which the defendant held the stock as collateral. Freeman paid this debt, and au-

thorized the defendant to sell the stock for his (Freeman's) account. Afterward, in January, 1910, Freeman assigned the stock to the plaintiffs. Prior to the making of this assignment, however, and in 1908, the defendant sold the stock to  one Hillery, receiving therefor $3,200, but concealed this fact from George Freeman during his lifetime and from the plaintiffs after the death of George, which occurred late in 1910. In February, 1911, the plaintiffs notified the defendant that they were the owners of the stock and requested him to turn over the possession of it. Instead of informing them of the sale he stated to them that the stock was in his safe, that he would hunt it up and return it to them. This, of course, he did not and could not do, and, in response to subsequent demands for the surrender of the stock, persisted in saying that the certificates were in his possession, although he had not been able to locate them among his papers, but that he would soon do so and turn them over to the plaintiffs. At no time did he inform them that the stock had been sold, and the plaintiffs did not discover that fact until shortly before this suit was instituted, which was in September, 1916. By it the plaintiffs seek to recover from the defendant the amount of the purchase-money paid by Hillery for the stock, with interest thereon from the date of payment. The trial resulted in a verdict for the plaintiffs and the defendant appeals.

Among the defences set up as a bar to the plaintiffs' right of action was the statute of limitations. In dealing with this defence the court charged the jury that, although the action was not brought until 1916, eight years after the sale of the stock, if they should find (as they did) that the defendant represented to the plaintiffs that he had the stock in his possession, that the plaintiffs relied upon this representation, and that it induced them to refrain from bringing suit prior to the time when the statute normally became a bar, then the defendant was estopped from pleading the statute of limitations, and that they should disregard this defence. The principal ground upon which we are asked to reverse the judgment is rested upon this instruction to the jury which, it is insisted, is erroneous.

In the instruction complained of the trial judge followed the decision of the Supreme Court in *Crawford* v. *Winterbottom,* 88 *N. J. L.* 588. In that case the plaintiffs were induced to refrain from beginning suit within the time required by the statute by reason of the fact that the defendants induced them to enter into negotiations for a settlement, with the fraudulent and corrupt intent of inducing them to defer bringing their suit until the statutory time had expired. It was held that the defendants were estopped by their false and fraudulent conduct from setting up the statute of limitations as a bar to the plaintiff's action. But, in our view, Crawford *v.* Winterbottom was wrongly decided. It is in opposition to the doctrine declared in *Freeholders of Somerset* v. *Veghte,* 44 *Id.* 509, a case which has frequently been cited with approval, which has never been subjected to adverse criticism, and which, in our view, lays down correctly the principle applicable to cases like that now before us. In that case the freeholders sought to recover from Veghte moneys which had been received by him as collector of the county, and fraudulently converted to his own use. Veghte pleaded the statute of limitations. The freeholders replied that he had fraudulently concealed the embezzlement, and that it had not been discovered until within six years next before the commencement of the action. The question for determination was whether the fraudulent concealment for a period of more than six years after the cause of action had accrued was a bar to the defendant's right to plead the statute. In discussing the question the court cites with approval the following statement of Chief Justice Hornblower in *Thorpe* v. *Corwin,* 20 *Id.* 311: "The statute of limitations makes the lapse of time a positive and legal bar. When once it has begun to run against a person under no legal disability, it pursues its course uninterrupted by any subsequent events; and when the period prescribed by the statute has elapsed, the bar is complete, and its force can neither be strengthened nor impaired by anything that has happened in the meantime. * * * The statute leaves nothing for presumption. Time alone settles the rights of the parties by the giant force of the statute."

The opinion then points out that the statute of limitations contains various express exceptions from the operation of its provisions, and declares that when the legislature itself has expressly provided what facts shall take a given case out of a statute, courts of law are not permitted to engraft upon it other exceptions not contained therein, however inequitable the enforcement of the statute, without such exceptions, may be.

It is to be noted that the court, after saying that the force of the statute could not be impaired by anything that has happened after once it began to run, and that courts of law could not read into it exceptions other than those expressed by the legislature in the statute itself, declared that the doctrine of estoppel had been applied to prevent a resort to the defence of the statute of limitations even at law, and referred to the case of *Quick* v. *Corlies*, 39 *N. J. L.* 11, in support of this declaration. As we read the cited case the court clearly misapprehended the basis of its decision. The suit there was upon a sealed bill wherein Corlies contracted to pay Quick the sum of $500, and the writing contained the provision that "It is not to outlaw by the statute of limitations, value received." The question for decision was whether this provision of the contract was a bar to the defendant's right to plead the statute, the argument on the part of the defendant being that a private agreement which attempted to avoid the express terms of the statute was against the policy of the law. The court said: "The general rule is that no contract or agreement can modify a law, but the exception is, that where no principle of public policy is violated, parties are at liberty to forego the protection of the law. Statutory provisions designed for the benefit of individuals may be waived, but where the enactment is to secure general objects of policy or morals, no consent will render a non-compliance with the statute effective. This statute, limiting the time within which actions shall be brought, is for the benefit and repose of individuals and not to secure general objects of policy or morals. Its protection may, therefore, be waived by those who assent in legal form, and when acted on such waiver becomes an

estoppel to plead the statute." The use of the word "estoppel" at the end of this citation was unfortunate. What the case really decides is, that when a defendant, for a valuable consideration, agrees to waive the protection of the statute, and the agreement is acted upon by his adversary, it will be recognized as valid in a court of law and will be considered as a complete answer to a plea setting up the bar of the statute. In other words, the estoppel spoken of is an "estoppel by contract" (assuming that the law recognizes such an estoppel) and not an estoppel *in pais*.

The writers both of text-books and of opinions frequently use the words "waiver" and "estoppel" as synonymous. But this is quite inaccurate. By "waiver" is meant the act of intentionally relinquishing or abandoning some known right, claim or privilege. For instance, a defendant may waive the protection of the statute of limitations by express agreement, as in the case of Quick *v.* Corlies, or he may do it by necessary implication, by failing to plead the statute as a defence. The doctrine of estoppel *in pais* rests upon the ground of fraud; in other words, upon the principle that where anyone has done an act, or made a statement, which it would be a fraud on his part to controvert or impair, because the other party has acted upon it in the belief that what was done or said was true, conscience and honest dealing require that he be not permitted to repudiate his act or gainsay his statement.

In the Veghte case the grounds upon which the doctrine of equitable estoppel rests were clearly present. His fraudulent act in concealing the fact that the plaintiff had a cause of action against him was the inducing cause of its failure to institute its action within the statutory period. The situation, in its legal aspect, did not differ from what it would have been if Veghte had stated to the board in express terms that his accounts were straight, and that he did not owe the county a dollar, and the board had accepted that statement as true. The doctrine equally applies whether the fraud of the defendant consists of an act of concealment, or an actual misrepresentation of a fact. The basis upon which the decision was rested is that the legislature has not seen fit to ex-

cept from the operation of the statute cases where the party
against whom the statute normally runs has been induced by
the fraudulent conduct of his adversary to postpone the bring-
ing of his suit until after the statutory period has elapsed;
and that courts of law are not justified in reading into the
statute exceptions which are not contained in it.

But, as was pointed out in the Veghte case, although the
fact that the fraudulent act or representation of the defend-
ant which induces delay in the bringing of his suit by the
plaintiff is no bar to the plea of the statute in an action at
law, appropriate and adequate relief under such circumstances
may be afforded the plaintiff by an application to the Court
of Chancery. Under our system of jurisprudence there exists
in that court an inherent power to prevent one from exercis-
ing even his rights—whether existing at common law or
created by statute—when by his fraudulent conduct he has
made it inequitable that he should be permitted to exercise
those rights. *Lincoln* v. *Judd*, 49 *N. J. Eq.* 387, and *Hollo-
way* v. *Appleget*, 55 *Id.* 583, are cases where our Court of
Chancery exercised that power by restraining a defendant
from using the statute of limitations as a defence under cir-
cumstances quite similar to those present in the case now be-
fore us; and the decision in the latter case was affirmed by
this court.

Other grounds of appeal were relied on as additional rea-
sons for reversing this judgment. They do not seem to us to
be of sufficient importance to require discussion. It is enough
to say, in disposing of them, that we have examined them
carefully and find them to be without merit.

The judgment under review will be reversed.

WHITE, J. (dissenting). This action was brought in a
law court. It could not be brought in the Court of Chan-
cery. Two defences are set up, namely, denial of the cause of
action and the statute of limitations. To the defence of the
statute of limitations the plaintiff has a complete answer
which is that the defendant is estopped from setting up the

statute by his fraudulent concealment of the cause of action, which concealment was intended to, and did, deter the plaintiff from commencing suit until the statute had run. The question before us is: May the plaintiff assert this estoppel *in pais* in the trial of the cause before a jury in the court where the suit was brought, or must he delay that suit for a few months, or, possibly, a year or more, and go into the Court of Chancery for an injunction restraining the defendant from setting up the statute of limitations in the law court, and if an appeal be taken from the injunction decree, go through the Court of Errors and Appeals and then come back and take up his suit again in the law court and try it before a jury upon the other issue to ascertain whether or not he is entitled to recover at all?

Obviously, it is desirable, from the practical standpoint in the administration of justice, that both issues should be tried out at once in the law court before a jury, as they would be in the similar case of a suit on a contract one of the defences to which was fraud in its inducement. The question is, Can this be done in New Jersey without violating well-established legal principles? *Freeholders of Somerset* v. *Veghte, supra,* decided, in 1882, that it cannot; *Crawford* v. *Winterbottom, supra,* decided, in 1916, that it can. Both are Supreme Court decisions. I think the Court of Errors and Appeals has not heretofore spoken on this point.

That where there is an estoppel *in pais* the Court of Chancery will enjoin the setting up of the statute of limitations as a defence in an action at law is, I think, well established in this state. *Holloway* v. *Appleget, supra; Clark* v. *Augustine,* 62 N. J. Eq. 689. And this being so, I find it difficult to give full literal effect in a case like the present to the language of Chief Justice Hornblower in *Thorpe* v. *Corwin, supra* (a case by the way which did not in any way involve the principle of estoppel *in pais*), to the effect that when the statute of limitations is invoked in cases not falling within its express exceptions, time alone settles the rights of the parties by the giant force of the statute. Obviously, if the lapse of time alone is

to be absolutely controlling, the Court of Chancery should also bow to the mandate of the legislature as well as the courts of law. The principle of estoppel *in pais* being admitted in the Court of Chancery to be superior to the mere lapse of time under the statute, the real question is, May it not, consistently with the best weight of authority, have the same effect in the courts of law?

It is said in 16 *Cyc.* 724: "The doctrine of estoppel *in pais* is derived from the courts of equity and is interposed to prevent injustice and to guard against fraud by denying to a person the right to repudiate his acts, admissions or representations, when they have been relied on by persons to whom they were directed and whose conduct they were intended to, and did, influence," and again, "As a general rule an estoppel *in pais* may be set up in actions at law as well as in suits in equity." In volume 25, page 1214, under the head "Limitation of Actions," *Cyc.* further says: "In courts of equity it is a settled doctrine that fraudulent concealment of a cause of action will postpone the operation of the statute of limitations until the discovery of the fraud. In actions at law where the question whether a fraudulent concealment of the fact upon the existence of which the cause of action accrues would void the statute of limitations, has also frequently arisen, there has been considerable conflict of opinion. In the absence of statutory exception it is held in some jurisdictions that such concealment does not postpone the operation of the statute of limitations. The weight of authority, however, supports the contrary view and follows the rules which obtain in equity under which such concealment is a good reply to a plea of the statute of limitations."

*Cyc.* also quotes (volume 16, page 724, note 95) from *Keate* v. *Phillips*, 18 *Ch. Div.* 560, as follows: "The common law doctrine of estoppel was a device which the common law courts resorted to at a very early period to strengthen and lengthen their arm; and not venturing to exercise the equitable jurisdiction over the subject before them, they did convert their own special pleading tactics into an instrument by

which they could obtain an end which the Courts of Chancery, without any foreign assistance, did at all times put in force in order to do justice."

In *Quick v. Corlies, supra,* a law court case, Mr. Justice Scudder, in the Supreme Court, speaking for himself, Chief Justice Beasley and Mr. Justices Dixon and Reed, said the statute of limitations may be waived by those who assent in legal form, and when acted upon such waiver becomes an estoppel to plead the statute.

I think, therefore, that where there has been a fraudulent concealment of the cause of action that the common law doctrine of estoppel *in pais* is available in the law courts of this state to postpone until the discovery of the fraud the commencement of the operation of the statute of limitations, and this, although there is at the same time jurisdiction also in the Court of Chancery to so enjoin such commencement. For this reason, and because I think it very desirable to avoid as much as possible the necessity for litigants to appeal to two courts of first instance in order to get justice instead of being accorded full and complete justice in one court, my vote is for affirmance.

NOTE.—I am requested by Mr. Justice Black and by Judges Williams, Heppenheimer and Gardner to say that they concur in the foregoing views.

*For affirmance*—BLACK, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, JJ.   5.

*For reversal*—THE CHIEF JUSTICE, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, KATZENBACH, TAYLOR, JJ.   8.