Essex County Circuit Court.

TITLE CLEARING CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF, v. MORRIS H. KLEIN, MILDRED J. HELD, MAX T. SAX, HERMAN SAX, UNITED STATES OF AMERICA, THE CITY OF NEWARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND NEWARK TIDEWATER TERMINALS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.

Decided May 26, 1941.

For the plaintiff, *Richard J. Fitz Maurice.*

For the defendants Klein et al., *Harold Simandl* and *Joseph Coult.*

For the defendant the United States of America, no appearance.

For the defendant the City of Newark, *James F. X. O'Brien* (by *Raymond Schroeder*).

For the defendant Newark Tidewater Terminals, Inc., *Lum, Tamblyn & Fairlie* (by *John S. Foster*).

LEYDEN, C. C. J.   The plaintiff in its complaint demands of the defendants possession of a tract of land with the appurtenances, situate in the City of Newark, containing 2.59 acres more or less,  *  *  *  (description omitted).

The plaintiff alleges that its right to possession accrued on February 16th, 1829, and the defendants wrongfully deprive it thereof to its damage in the sum of $200,000.   The summons was issued August 23d, 1937.

The United States of America filed no answer.   The defendants Klein et al. and the Newark Tidewater Terminals, Inc., each filed an answer denying the truth of the matters contained in the complaint, and the defendant the City of Newark, in addition to a general denial, gave notice of its claim for an allowance and set-off for permanent improvements amounting to $61,479.75.

The case was tried by the court without a jury.   After examining the evidence, hearing the testimony and counsel for the plaintiff and defendants, the court finds the following facts:

· By stipulation between the plaintiff and the defendant, the City of Newark, the plaintiff withdrew its claim for damages and the City its claim for allowance and set-off for permanent improvements; both withdrawals being without prejudice.

It was stipulated by and between counsel for the respective parties that the lease to the Tidewater Terminals, Inc., and the ordinance of the City of Newark authorizing said lease cover the premises in question, and that said premises are also known in the city records as lot 2 in block 1585 and lot 3 in block 1586 and were formerly known as section 8, plot 16.

Enos Pierson and Abigail, his wife,  *  *  *  in considera-

tion of the sum of $1,250, conveyed to Daniel Smith, William Williams, Stephen D. Day, Samuel Williams, Amos Williams, Abraham P. Meeker and William Condit, * * * four lots or tracts of land, the third of which is the lot or tract in question, by deed dated the 16th day of February, 1829, * * * and recorded March 2d, 1829, in Book Z-2 of Deeds, * * * page 549-551.

On May 12th, 1829, approximately three months later, said seven grantees with their respective wives, in consideration of the sum of $843.54, conveyed the first tract described in the Enos Pierson deed to Stephen Condit * * *. This conveyance was * * * recorded in Book B-3 of Deeds, page 412, &c.

On May 12th, 1829, William Williams, Stephen D. Day, Abraham P. Meeker, William Condit, Samuel Williams and Amos Williams, six of the said seven grantees, with their respective wives, in consideration of the sum of $450, conveyed the second tract mentioned in the deed of Enos Pierson to Daniel Smith * * * one of the seven grantees. This instrument was * * * recorded on the 9th day of June, 1829, in Book B-3 of Deeds, page 465, &c.

No conveyance of the remaining two parcels (one of which, the third tract, is the premises in question), out of the seven grantees or any of them appears of record. About eight years later, on the 20th day of July, 1837, Enos Pierson made and executed his last will and testament in the presence of P. Kingsley, R. P. Day and John M. King. This will was probated on June 26th, 1838. By it *inter alia* he gave and devised to his son, Lewis Pierson, his heirs and assigns forever, fourteen and twenty-hundredths acres of land known as the "Amos Place," also "all my salt meadow lying, situate and being at a place called 'Crab Pond.'"

On the 17th day of September, 1838, Lewis Pierson conveyed the premises in question to George W. Sharpe in consideration of the sum of $12.95 by the same description contained in the deed from Enos Pierson and wife to Daniel Smith and the six other grantees, with the additional descriptive clause: "Bounded Westwardly by Meadow now or formerly of Samuel Dodd & Uzel Ogden Northerly by Nathaniel

& Stephen Harrison Easterly by John Perry & Southerly by Jotham Harrison dec'd it being a lot of land bequeathed by Enos Pierson dec'd to the said Lewis Pierson." This instrument was * * * recorded on the 9th day of May, 1844, in Book B-4 of Deeds, page 396, &c. .

The plaintiff traced its chain of paper title to the premises in question beginning on the 16th day of February, 1829, as follows:

Deed from Enos Pierson and Abigail his wife, to Daniel Smith, William Williams, Stephen D. Day, Samuel Williams, Amos Williams, Abraham P. Meeker and William Condit, the said seven grantees. Daniel Smith died in 1853. His last will and testament was probated September 9th, 1853. He left him surviving as residuary legatees three daughters, Charlotte Traphagen, Harriet Carter and Catherine Smith; a grandson, William S. Pierson and such other grandchildren as should survive him. Charlotte Traphagen died intestate prior to October 21st, 1878, leaving her surviving Albert Traphagen, husband, Phoebe P. Traphagen, daughter, Fannie E. Traphagen, daughter, and Sarah Katherine Traphagen Cox, daughter. Sarah Katherine Traphagen Cox died testate December 29th, 1929, her will being probated on January 9th, 1930, leaving one-third of her residuary estate to Alberta Traphagen Cox Nelson, a daughter, a life estate in two-thirds to her son, Joseph E. Cox, Jr., and one-half of two-thirds of remainder, after the death of their father, Joseph E. Cox, Jr., to a grandson, Joseph E. Cox, 3d, and a granddaughter, Barbara Cox.

Deed from Phoebe Traphagen and Fannie E. Traphagen, both unmarried, Joseph E. Cox, Sr., and Mary Cox, his wife, Barbara Cox, unmarried, Joseph E. Cox, Jr., unmarried, and Fannie E. Traphagen and Joseph E. Cox, Sr., executrix and executor and trustees of the last will and testament of Sarah K. Cox, deceased, to the plaintiff. Joseph Edmund Cox life tenant, now distinguished with the designation "Senior" and Joseph Edmund Cox, a grandson, now distinguished with the designation "Junior" and Barbara Cox, remaindermen, are living. Joseph Edmund Cox, Jr., was born October 9th, 1914, and Barbara Cox was born August 20th, 1912.

Catherine Smith, unmarried, daughter of Daniel Smith, died November 26th, 1905. By her will, probated December 7th, 1905, she devised one part of the residue of her estate to her sister, Harriet Carter; one part to her nieces, Phoebe P. Traphagen, Fannie E. Traphagen and Sarah Katherine Traphagen Cox; and one part to her nephews, Frank, Robert P. and Edgar Williams.

Harriet Carter, widow, died January 26th, 1916. By her will probated February 7th, 1916, she devised one-third of the residue of her estate to Mary Louise Carter, daughter; one-third to Elizabeth Carter, daughter; and one-third to her granddaughters, Helen L. Carter Anderson and Hilda H. Headley.

Deed from Mary Louise Carter and Elizabeth Carter to the plaintiff.

Hilda H. Headley, granddaughter of Harriet Carter, devised the residue of her estate to her husband, Harold W. Headley. He died November 4th, 1936, leaving a will wherein he devised the residue of his estate to his then wife, Sarah, and to his children Roberta Headley Reeve, then aged twenty years, and Frances Headley, then aged nine years.

Similarly the plaintiff has acquired by deed a portion of the interests, if any, of two other of the said seven grantees, namely, Amos Williams and Abraham P. Meeker.

It seems quite unnecessary to trace in detail the various steps in the descent of these interests from the ancestors Amos Williams and Abraham P. Meeker to the grantors of the plaintiff. Suffice it to say that ostensibly the plaintiff has acquired a paper title to the premises in question equal to an undivided 5/63ds interest out of the grantee Daniel Smith; an undivided 2/35ths plus a life interest in an undivided 1/35th out of the grantee Amos Williams; and an undivided 1/21st interest out of the grantee Abraham P. Meeker, totaling an undivided 58/315ths interest plus an undivided 1/35th of a life estate. It is unnecessary to determine accurately the quantum of the undivided interest of the plaintiff for the owner of such an interest may maintain ejectment.

There is no proof that the plaintiff or any of its predecessors in title, including the said seven grantees, ever exercised

or asserted any proprietory interest, dominion, possession or control of the premises in question.

The defendants Klein et al., trace their chain of paper title to the premises in question beginning with the last will and testament of Enos Pierson, probated on June 26th, 1838, as follows:

The said will of Enos Pierson wherein he devised the premises in question, described as the salt meadow situate at a place called "Crab Pond" to his son, Lewis Pierson.

Deed dated September 17th, 1838, from Lewis Pierson to George W. Sharpe. This instrument was recorded May 9th, 1844.

Deed from George W. Sharpe and Sarah Sharpe, his wife, to William S. Perry, dated May 6th, 1844, and recorded May 9th, 1844.

The proof indicates without contradiction that William S. Perry was born in 1817 and died January 11th, 1900. He had married Mathilde Williams who died December 11th, 1879. The following six children were born to William S. Perry: (1) Lewis Perry, who died December 6th, 1872. His widow, Sarah A. Reed, died June 21st, 1903. Lewis Perry had two children, Jay E. Perry, who died December 16th, 1902. Jay E. Perry was survived by a son, Carl E. Perry, and a son, Lewis Perry. Carl E. Perry is married and his wife is Bessie Perry. The other child of Lewis Perry was named Margarette N. Perry, who was born in 1871 and died in 1872; (2) Martha Jane Perry who married Stephen Post. She died August 19th, 1881, leaving her surviving one child, Estelle Perry Hannan, wife of John Hannan; (3) Pyrena Perry who married Isaac A. Pierson. He died in 1903; (4) Stacy B. Perry; (5) Marion A. Perry who married Ebenezer Rice; (6) William W. Perry who was born in 1859 and died in 1866.

Deed from Marion A. Perry Rice, widow of Ebenezer Rice. to Lucy L. Fairchild, dated February 26th, 1920, for a lot of meadow land known and designated on the assessment maps of the City of Newark as lots 2 and 3 in block 1585 and lots 3 and 4 in block 1586 containing five acres, more or less, which embraces the premises in question.

Deed from Pyrena Perry Pierson, widow of Isaac A. Pierson, to Lucy L. Fairchild, dated February 26th, 1920, conveying the premises in question by the assessment map designation.

Deed from Lucy L. Fairchild and Cecil Fairchild, her husband, to Morris H. Klein, dated July 2d, 1935, conveying an equal undivided two-fifths interest acquired from Marion A. Perry Rice and Pyrena Perry Pierson in the premises in question to this defendant.

Deed from Stacy B. Perry et ux. and Estelle Hannan and John E. Hannan, her husband, to David L. Perry, dated May 5th, 1920, conveying the premises in question.

Deed from David L. Perry et ux., to Stuart Lindsley dated July 26th, 1935, conveying an equal undivided two-fifths interest of the grantors to the premises in question. David L. Perry is described in this conveyance as the son of Stacy B. Perry.

Deed from Stuart Lindsley et ux. to Morris H. Klein dated August 7th, 1935, conveying an equal undivided two-fifths interest in the premises in question.

Deed from Lewis K. Perry and Edith, his wife, and Carl E. Perry and Bessie, his wife, to Morris H. Klein dated August 5th, 1935, conveying an equal undivided one-fifth interest in the premises in question.

Deed from Morris H. Klein and Anna M., his wife, to Max T. Sax, Mildred J. Held and Herman Sax dated January 11th, 1936, conveying an undivided three-quarter interest in the premises in question.

There is some testimony tending to support the inference that on occasions, William S. Perry cut the salt hay on the land which he owned in the Newark meadows.

In its bill of particulars of claim or title the City of Newark traced a supporting chain of paper title beginning December 27th, 1907, with a deed from the Comptroller of the City of Newark to Florence C. Cahill under *Pamph. L.* 1886, *ch.* 112, commonly called the Martin Act; then from Cahill to Communipaw Central Land Co., to the City of Newark, to the United States of America, to the City of Newark (under contract to repurchase). This effort was abandoned and the

City of Newark elected to rely upon its open, notorious and continued possession of the premises in question for more than twenty years next before the commencement of the present proceeding. Briefly, the proof of the City of Newark demonstrates that prior to 1914 there was considerable agitation in the City of Newark for the reclamation of the meadowlands and the development of the Newark Bay area into a port. Dr. Charles F. Kraemer, a witness for the city, had studied the possibilities of the development of the port since 1907. After filling an unexpired term as a member of the Board of Street and Water Commissioners of the city he was elected a member thereof, campaigning upon a platform planked solely with the project for the reclamation of the meadows and the development of the area. On January 2d, 1914, the day after his assumption of the duties of the office for the full term, Dr. Kraemer and a group of city officials, after wide publicity, conducted a ground breaking ceremony on the site. He made public announcement at noon on that day that the city had acquired title to sixty per cent. of the meadow and the owners of the other forty per cent. should take notice that the city was then taking possession thereof and the period of adverse possession would thereupon commence. At first blush such an announcement upon the part of a layman seems startling, but when one considers that the difficulties surrounding the acquiring of good title by purchase were apparent to the law department of the city and that it undoubtedly instigated and composed the announcement, the testimony is quite credible and it is so found as a fact.

After the taking of pictures to commemorate the occasion the city proceeded in accordance with a preconceived plan to dredge the present ship channel and to use the hydraulic fill therefrom to raise the level of the meadow to the required height. The premises in question are in the area so affected. A sign was erected at or near the corner of the premises in question advising the general public that the area was the site of the development of the Port of Newark, and further and more detailed information would be furnished at the city hall on application therefor. The dredging was finished in 1914, after which Port street was graded, paved and neces-

sary railroad tracks laid in 1915. Other streets, water, gas and sewer mains, electrical conduits, lumber bulkheads and wharves were laid and constructed by the city. The city employed watchmen at the private railroad crossing and prevented access to the area by non-business visitors. The city exercised possession, dominion and control to such an extent that it leased the area known as the Army Base to the United States Army in 1917, and in 1916 or 1917 leased portions of the said area to two tenants. On April 10th, 1919, the city conveyed the army base area which included the premises in question to the United States Government and thereafter the United States Government by contract, agreed to re-convey the base area to the city upon the completion of the installment payments therein specified.

The possession of the city of this area, which includes the premises in question, from January 2d, 1914, was open, visible, notorious, continuous and uninterrupted for more than twenty years prior to the institution of this litigation by the plaintiff on August 23d, 1937; in fact, it has so continued to the present time.

The plaintiff raises two nice points in opposition to the city's claim of title by adverse possession, namely: (1) that the city by the purchase of a supporting paper title arising out of the attempted foreclosure of the tax lien under the Martin Act has broken the continuity of the intentional hostility as against the whole world, so necessary in a claim of title by adverse possession; and (2) that the running of the statute (*N. J. S. A.* 2:24-12) has been tolled by intervening disabilities of infancy and outstanding life estates.

The first point is developed by the plaintiff's proof, as part of its main case, of the city's purchase of a paper title commencing, as has already been pointed out, on December 27th, 1907, with a deed from the Comptroller of the City of Newark to Florence C. Cahill under the Martin Act, *supra,* and also upon the alleged admission by the city in its bill of particulars that it would rely, in addition to its claim of title by adverse possession, on said supporting paper title. The second point is developed by the fact that during a portion of the twenty-year period Barbara and Joseph E. Cox, Jr., were infant

remaindermen with an outstanding life estate in their father, Joseph E. Cox, Sr. Similar intervening disabilities and life estates arose in the descent of the alleged interests of Harriet Carter, daughter of Daniel Smith and Alfred G. Williams, son of Edward Williams, grandson of Amos Williams.

There are at least two answers to these points of the plaintiff. As to both contentions, the plaintiff cannot succeed on the weakness of the defendant's title. More particularly as to the second, the proof shows that when the statute (*N. J. S. A.* 2:24-12) began to run on January 2d, 1914, if the paper title of the plaintiff is sound, Sarah Katherine Traphagen Cox was vested with an undivided interest in the premises in question with a right of entry which had descended to her about October 21st, 1878, and had remained in her to her death on December 29th, 1929. There is no proof that she was laboring under any disability on January 2d, 1914, or for the fifteen years, eleven months and twenty-seven days which elapsed from the entry into possession by the city to the date of her death. It was her last will and testament which created the life estate in her son, Joseph E. Cox, Sr., with the remainder over to her grandchildren, Joseph E. Cox, Jr., and Barbara Cox.

Similarly Harriet Carter, daughter of Daniel Smith, died on January 26th, 1916, two years and twenty-four days after the city had entered into possession of the premises in question. There was no proof that she was laboring under any disability on January 2d, 1914. It was by her last will and testament that the residue of her estate was devised to her daughters, Mary Louise Carter and Elizabeth Carter and to her granddaughters, Helen L. Carter Anderson and Hilda H. Headley.

Likewise Alfred G. Williams was vested with an undivided interest with a right of entry on January 2d, 1914, as the devisee of his father, Edward Williams, who died April 21st, 1893. Alfred G. Williams died March 7th, 1929, fifteen years, two months and five days after the city entered into possession. There is no proof that he suffered any disability on January 2d, 1914. It was by his will that he created a life estate in his wife, Josephine B. Williams, with the remainder

over to the rector, wardens and vestrymen of Holy Trinity Episcopal Church of Orange, New Jersey. Therefore when the statute commenced to run, those persons, namely, Sarah Katherine Traphagen Cox, Harriet Carter and Alfred G. Williams, who had an undivided interest and a right or title of entry in the premises in question were neither insane nor under the age of twenty-one years.

The settled rule is that when the statute of limitations has once begun to run against a person who has a present right of entry and who is under no legal disability, its course will not be impeded nor its operation suspended by any subsequent disability. *Den ex dem. Clark* v. *Richards,* 15 *N. J. L.* 347; *Thorpe* v. *Corwin,* 20 *Id.* 311; *Pinckney & Bruen* v. *Burrage & Stephens,* 31 *Id.* 21; *Freeholders of County of Somerset* v. *Veghte,* 44 *Id.* 509; *Freeman* v. *Conover,* 95 *Id.* 89; 112 *Atl. Rep.* 324. The running of the statute therefore was not tolled.

In any event these points avail the plaintiff nothing. To succeed, the plaintiff must do so on the strength of its own title and it cannot rely upon the weakness of that of its adversaries. *Troth* v. *Smith,* 68 *N. J. L.* 36; 52 *Atl. Rep.* 245; *Winfield* v. *Saunders,* 105 *N. J. L.* 580; 147 *Atl. Rep.* 537. The plaintiff has failed to establish its title or right to possession by a preponderance of the evidence.

The plaintiff traced its chain of paper title to Enos Pierson in 1829 with no showing of possession in the plaintiff or any of its predecessors in title. Defendant Klein et al. traced his chain of paper title to the same source with a possible showing of the exercise of some dominion over the property by one of his predecessors in title. The defendant city traced its right to possession to January 2d, 1914, a source not common with either that of the plaintiff or the other defendant. Its claim of title by adverse possession in the bill of particulars does not admit good paper title in the plaintiff. The rule is well settled that the plaintiff must, in order to succeed, trace its paper title back to some one who is shown to have been in possession of the premises in question, or failing in that, it must show that its grantor acquired title from the original proprietors, or it must trace its title back to a common

source, provided the defendant does not claim by any other title. *Troth* v. *Smith, supra; Rollins* v. *Atlantic City Railroad Co.,* 70 *N. J. L.* 664; 58 *Atl. Rep.* 344; *Wittke* v. *Wittke,* 102 *N. J. L.* 176; 130 *Atl. Rep.* 598. At least in so far as the city is concerned, the plaintiff has not complied with this rule of law. Its failure so to do permits the defendant the city of Newark to retain possession until ousted by some one who has a superior title. *Troth* v. *Smith, supra.*

The verdict is in favor of the defendants and against the plaintiff, and a judgment may be entered accordingly.