148 N.J. Super. 27 (1977)
371 A.2d 812
JOHN F. CRYAN, SHERIFF OF ESSEX COUNTY; BOARD OF CHOSEN FREEHOLDERS OF ESSEX COUNTY, PLAINTIFFS-RESPONDENTS,
v.
ANN KLEIN, COMMISSIONER NEW JERSEY DEPARTMENT OF INSTITUTIONS AND AGENCIES; AL HOFFMAN, KEEPER OF NEW JERSEY STATE PRISON, TRENTON; RICHARD C. LEONE, TREASURER, STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted February 14, 1977.
Decided March 8, 1977.
*28 Before Judges FRITZ, ARD and PRESSLER.
Mr. William F. Hyland, Attorney General of New Jersey, attorney for the appellants (Mr. Stephen Skillman, Assistant Attorney General, of counsel; Mr. Mark A. Geannette, Deputy Attorney General, on the brief).
Mr. Francis Patrick McQuade, Essex County Counsel, attorney for the respondents (Mr. Oscar J. Miller, Assistant County Counsel, of counsel and on the brief).
Mr. Martin Verp, Passaic County Counsel, attorney for Edwin Englehardt and the Board of Chosen Freeholders of Passaic County, Amicus Curiae (Mr. John G. Thevos, Special Assistant County Counsel, of counsel and on the brief).
The opinion of the court was delivered by ARD, J.A.D.
The Commissioner of Institutions and Agencies, the State Prison Keeper and the State Treasurer appeal a Law Division order which mandated that the State Prison Keeper make timely acceptance of Essex County prisoners duly sentenced to State Prison within the time frame specified by N.J.S.A. 2A:164-18 and N.J.S.A. 30:4-6. The order also severed from this action a claim for money damages which is not part of this appeal.
*29 The facts are not in dispute. It is the position of respondents that the sheriff is required by statute to deliver prisoners to the State Prison facility no later than 20 days following sentencing. Moreover, respondents contend that the Keeper of Trenton State Prison is required by statute to receive such prisoners into the state facility. As a result of a new policy instituted by appellants in December 1975, the State Prison refused to accept prisoners when delivered by Essex County authorities and insisted on Essex County conforming to a state schedule which required the county to maintain prisoners sentenced to State Prison on an average of 24 to 25 days after sentencing.[1] The State justified its new policy because of undisputed overcrowding in the State Prison. Due to this overcrowding, the policy was formulated whereby prisoners were taken from the various counties on a rotating alphabetical basis. Thus, the prisoners would first be taken from Atlantic County, then Bergen County and so on. Certain preferences were given to the larger counties which had overcrowding problems. Prisoners were accepted from these larger counties, including Essex, on a more frequent basis. In resisting this procedure Essex County delivered prisoners to the Trenton State Prison pursuant to N.J.S.A. 2A: 164-18 and N.J.S.A. 30:4-6. The institution, claiming overcrowded conditions, refused to accept any prisoner delivered contrary to its new administrative policy of accepting prisoners on a rotating alphabetical basis, thereby requiring the county to maintain the prisoners at county expense until accepted by the state institution. The trial judge, while sympathizing with the state institution's position, ruled that the aforementioned statutes compelled the State Prison Keeper to accept prisoners from Essex County.
The question raised on this appeal is whether these statutes are mandatory or directory.
*30 N.J.S.A. 2A:164-18 deals with the sheriff's obligation in delivering prisoners and provides:
In all cases where the defendant, upon conviction, is sentenced by the court to hard labor and imprisonment for a term in the state prison, the clerk of the court in which the conviction was had shall, within 5 days after the sentence is pronounced, furnish to the sheriff of the county a certified copy of the taxed bill of costs in the case, and the sheriff or his lawful deputy shall, within 15 days after receiving such certified copy, transport to the state prison and there deliver into the custody of the keeper of the prison the person so sentenced, together with all other persons so sentenced within the same period, together with a copy of the sentence of the court ordering such imprisonment and of the taxed bill of costs of prosecution against the defendant, certified under the hand and seal of the clerk of the court where the conviction was had. The person so delivered to the keeper of the state prison shall be safely kept therein until the time of his confinement shall have expired and the fine or fines and cost of prosecution be paid or remitted, or until he shall be otherwise discharged according to law.
In every case at least 48 hours, exclusive of Sundays and legal holidays, shall elapse between the time of sentence and removal to the state prison. [Emphasis supplied]
Complementing the aforementioned statute, N.J.S.A. 30:4-6 deals with the responsibility of the State Prison with respect to receiving prisoners and provides:
The principal keeper of the State prison and the chief executive officer of each of the other correctional institutions shall receive from the hands of the sheriff or other proper officer every person sentenced to imprisonment in his institution and safely keep him therein according to law and the rules and regulations of the institution until lawfully discharged therefrom. * * * [Emphasis supplied].
In both instances the quoted sections of the statutes use the word "shall." As a matter of statutory construction, there is a presumption that "shall" appearing in a statute is used in the mandatory or imperative sense and not in a directory sense. "May," on the other hand, is permissive and directory. Concededly, the meaning of these terms can be interchangeable when the context of their use warrants such an interpretation. A concise analysis of this question of *31 statutory construction appears in Harvey v. Essex Cty. Bd. of Freeholders, 30 N.J. 381 (1959):
In determining whether a statute is mandatory or directive regard shall be had to the purpose and intent of the Legislature. Mr. Justice Heher in Leeds v. Harrison, 9 N.J. 202, 213 (1952) stated: "`May' is a permissive and not an imperative verb which is to be given its natural and ordinary meaning, barring a clear contextual indication of a different usage. The question is essentially one of legislative intent, to be gathered from the nature and object of the statute considered as a whole; and in that inquiry public and individual rights are sometimes factors to be regarded." The word "may" is ordinarily permissive or directory, and the words "must" and "shall" are generally mandatory. Such terms, however, have been held to be interchangeable whenever necessary to execute the clear intent of the Legislature. The problem is primarily one of ascertaining the intent of the Legislature. * * * [at 391-392].
In Union Terminal Cold Storage Co. v. Spence, 17 N.J. 162 (1954) the court stated:
In determining whether an act is imperative and mandatory or merely directory there is a presumption that the word "shall" (such word appears in this statute) is used in an imperative and not a directory sense, and while this presumption is not a conclusive one it can only be overthrown by something in the character of the legislation or in the context which will justify a different meaning. Haythorn v. Van Keuren & Son, 79 N.J.L. 101 (Sup. Ct. 1909); City of Jersey City v. State Board of Tax Appeals, 133 N.J.L. 202 (Sup. Ct. 1945). * * * [at 166]
A careful analysis of the statutes in question reveals no legislative intent within the statute or elsewhere which would override the presumption that "shall" is used in the mandatory sense. The statute repeatedly uses "shall" as to the different duties addressed. We discern no reason to rule that the applicable statutes do not mean what they say. An objective reading of the pertinent law clearly indicates a legislative scheme to require the State to underwrite the cost of maintaining prisoners no later than 20 days after they are sentenced. Absent legislative authority, there is no basis for the State to foist the care and maintenance of prisoners on the counties. Like the trial judge, we also *32 sympathize with the appellants' plight. Quite obviously they have a problem of magnitude which they have been attempting to deal with in a humane, efficient fashion. However, the "practical" solution of delaying their admittance in the state institution, thereby causing the county to incur expense normally the obligation of the State, is contrary to law.
Appellants cite State v. Rosenberg, 78 N.J. Super. 400, 402 (App. Div. 1963), in support of their argument that the time limitations of N.J.S.A. 2A:164-18 are merely statutory guidelines for the various governmental bodies responsible for the incarceration of those convicted of crimes. We disagree and do not consider Rosenberg controlling. In Rosenberg a prisoner brought a habeas corpus proceeding in which he contended his confinement in the State Prison was illegal since he was transported prior to the 48-hour minimum required in the last paragraph of N.J.S.A. 2A: 164-18. Defendant claimed a denial of his fundamental rights and a denial of equal protection and due process. In affirming the lower court's denial of habeas corpus, the basic holding of the appellate court was to the effect that defendant did not receive any rights under N.J.S.A. 2A: 164-18. The court went on to say:
* * * In our view, the statutory provisions are directory in nature. The failure of the sheriff to wait a full 48 hours before removing defendant to the State Prison did not provide defendant with a valid ground for attacking an otherwise lawful confinement. Were we to adopt the position he urges upon us, the result would be that a prisoner who had legally been convicted, sentenced and committed, could gain release through habeas corpus merely because of the sheriff's failure to discharge in exactly the manner set out in the statute what, at best, is a ministerial function. [at 402]
The "48 hour" provision of the statute is irrelevant to the instant case. The holding in Rosenberg was that petitioner failed to demonstrate the deprivation of a right under the statute or any prejudice due to a deviation of the "48 hour" rule. The court did not have to resolve the question of *33 statutory construction, i.e., whether directory or mandatory. Moreover, the case did not attempt to divine the legislative intent within the statute or elsewhere. We are confident such a search, if made, would not have revealed a basis to overcome the presumption that "shall" is used in the mandatory sense.
Furthermore, we do not deem the broad powers vested in the Commissioner of Institutions and Agencies concerning work release (N.J.S.A. 30:4-91.3(b)), inmate furloughs (N.J.S.A. 30:4-91.3(a)), inmate transfers (N.J.S.A. 30:4-91.1), designation of place of confinement by the Commissioner (N.J.S.A. 30:4-91.3), and the many other statutes which vest him with authority to control the housing, employment and transfer of inmates among correctional institutions, etc., to implicitly empower the Commissioner to compel county governments to assume a share of the burden for maintenance of criminally sentenced defendants in the face of a statutory duty to accept the prisoners in a state institution.
N.J.S.A. 30:4-85 provides that the Commissioner may enter into a contract "with the various governing bodies of counties in this State for the amount to be paid for the maintenance of inmates of correctional institutions to be maintained in such county institutions." The clear and cogent implication of this statutory right to contract with the county governing bodies is the obligation of the State to pay for the county maintenance of prisoners sentenced to state institutions and to do so only when the arrangement is the result of a consensual agreement between the State and the county.
The Law Division order is affirmed.
NOTES
[1] As indicated infra, N.J.S.A. 2A:164-18 allows delivery to the State Prison anytime after 48 hours from the time of sentencing.