868 A.2d 1078

GENERAL MOTORS ACCEPTANCE CORP., A DELAWARE CORPO-RATION, PLAINTIFF, v. DIANE CAHILL & RICHARD CAHILL, DEFENDANTS/THIRD–PARTY PLAINTIFFS–APPELLANTS, v. FUTURE CHEVROLET, INC., THIRD–PARTY DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 12, 2005—Decided March 8, 2005.

554

Before Judges CONLEY, BRAITHWAITE and LISA.

*Andrew R. Wolf* argued the cause for appellants.

*Mark P. Ciarrocca* argued the cause for respondent (*Ciarrocca & Ciarrocca*, attorneys; *Mr. Ciarrocca*, of counsel and on the brief).

*Gail Chester* argued the cause for amicus curiae Legal Services of New Jersey (Legal Services of New Jersey, *Melville D. Miller, Jr.*, attorney; *Ms. Chester* and *Dawn K. Miller*, on the brief).

*Jeffrey J. Brookner* argued the cause for amicus curiae New Jersey Coalition of Automotive Retailers, Inc. (*Wilentz, Goldman & Spitzer*, attorneys; *Marvin Brauth*, of counsel and on the brief; *Mr. Brookner*, on the brief).

The opinion of the court was delivered by

LISA, J.A.D.

In 1995, the Legislature enacted the Consumer Protection Leasing Act (CPLA), *N.J.S.A.* 56:12–60 to –70, establishing requirements and standards for motor vehicle leases. The CPLA contains a one-business-day review provision as follows:

> (1) No lease shall bind a lessee or lessor unless both the lessee and lessor have had one business day to review the lease contract before the signing of the contract.
>
> (2) No leasing dealer may permit a prospective lessee to take possession of a motor vehicle subject to a lease unless the lessee is provided with a conspicuous notice which provides substantially the following: NOTICE: THE LESSEE AND THE LESSOR SHALL BE ENTITLED TO REVIEW THE CONTRACT FOR ONE BUSINESS DAY BEFORE SIGNING THE CONTRACT immediately adjacent to the signature line of the contract.[1]
>
> [*N.J.S.A.* 56:12–67b(1), (2).]

The CPLA authorizes the Director of the Division of Consumer Affairs (Division) to promulgate rules and regulations "as may be needed to effectuate the purposes of this act." *N.J.S.A.* 56:12–69. Within several months of the CPLA's effective date, the Division adopted a new regulation, *N.J.A.C.* 13:45A–28.8(d), effective January 24, 1996, *see* 28 *N.J.R.* 1394(b) (March 4, 1996), authorizing

---

[1] The phrase "immediately adjacent to the signature line of the contract" appears in the statute in capital letters. We assume this was unintended.

waiver of the one-business-day review provision, subject to certain conditions and requiring the use of a prescribed written waiver form containing certain information about the lease.

At issue in this case is the validity of the waiver regulation. The issue is of significant public importance because of the many vehicle lease transactions entered into on a regular basis. The amicus parties have informed us that one-third (estimated by Legal Services of New Jersey) to 40% (estimated by New Jersey Coalition of Automotive Retailers, Inc.) of all new-vehicle transactions in New Jersey are accomplished by lease.

Dianne and Richard Cahill leased a vehicle from Future Chevrolet, Inc. (Future), taking delivery of the vehicle on the same day they signed the lease. The lease contained the review-period notice as required by *N.J.S.A.* 56:12–67b(2), and the Cahills signed a waiver form that fully complied with *N.J.A.C.* 13:45A–28.8(d). They never contended that they did not understand their one-day review right or that their waiver of the right was not voluntary. Nor do they contend that they did not understand any provision of the lease.

After making several payments, the Cahills defaulted, the vehicle was repossessed and sold, and the assignee of the lease, General Motors Acceptance Corporation (GMAC), sued them for a deficiency. They settled their dispute with GMAC but, in a third-party complaint against Future, sought to declare the lease void because of non-compliance with the statutory one-day-review requirement. Because *N.J.S.A.* 56:12–70 provides that a violation of the CPLA constitutes an unlawful practice under the Consumer Fraud Act (CFA), *N.J.S.A.* 56:8–1 to –135, they sought treble damages, costs and attorney's fees against Future.

The Cahills argued that the waiver regulation is invalid because it is inconsistent with the CPLA and thus its promulgation exceeded the Division's authority. Therefore, they argued the lease is void because, pursuant to *N.J.S.A.* 56:12–67(b)(1), "[n]o lease shall bind a lessee" unless the lessee has first had one business day to

review it. The trial judge rejected this argument and dismissed the third-party complaint. We agree and affirm.

The stipulated facts reveal that the Cahills went to Future on October 18, 2000 and agreed to lease a new 2001 Chevrolet Blazer. On that day, they signed an order form, specifying the vehicle to be leased and key terms of the lease. They paid a deposit of $1,846.10.[2] Two days later, on October 20, 2000, the Cahills returned to Future and were presented with a completed lease agreement. The lease contained a conspicuous boldface notice next to the signature line, as required by *N.J.S.A.* 56:12–67b(2), that the lessee had the right to review the contract for one business day before signing it. The Cahills were also presented with a completed "Lease Waiver" in the form prescribed by *N.J.A.C.* 13:45A–28.8(d). They initialed and signed the form in all of the appropriate places, thus acknowledging that the specific lease terms had been explained to them, that they were aware of their right to review the lease for one business day before signing it, and that they chose to waive that right and sign the lease immediately. They then signed the lease and took delivery of the vehicle.[3]

_____

[2] On appeal the Cahills and amicus curiae Legal Services of New Jersey argue that the terms of the order form provide that the deposit is non-refundable, therefore constituting a violation of both the CPLA and the waiver regulation. Future disputes that the deposit was non-refundable. This issue was never raised in the trial court, and we will not consider it on appeal. *Nieder v. Royal Indem. Ins. Co.*, 62 *N.J.* 229, 234, 300 A.2d 142 (1973).

[3] The order form signed on October 18, 2000 reflected a $75 "Documentary Fee," including a $35 "Administrative Fee" and a $40 "M.V. Messenger Fee." This fee was included in the lease, resulting in a "Total cost of lease plus any related official fees and taxes" of $32,491.75. The waiver form reflected a "Total Cost of Lease" of $32,416.75, which did not include the $75 fee. The trial judge concluded that the Cahills failed to demonstrate that this circumstance constituted a violation of the CPLA, the CFA, or the Truth–in–Consumer Contract, Warranty and Notice Act, *N.J.S.A.* 56:12–14 to –18. While such a circumstance might be shown to demonstrate a violation in an appropriate case, we are satisfied that on this record no violation was shown. We affirm on this issue

Resolution of the issue before us requires a review of the essential provisions of the CPLA, ascertainment of the purpose of the one-business-day review provision, and evaluation of the entirety of the waiver regulation. The CPLA requires inclusion of detailed information in the lease, including, for example, whether the lessee has a purchase option at the end of the lease term, and, if so, the purchase price or method for determining it, and the total cost of the lease if the purchase option is exercised. *N.J.S.A.* 56:12–62. It is also required that the lease contain a description of the standards to determine excessive wear and tear, the formula for calculation of liability if the lessee terminates the lease, the residual value of the vehicle, the mileage allowable, the payments required at the inception of the lease, the gross capitalized cost of the vehicle, and other like information. *Ibid.*

The scant legislative history accompanying the CPLA includes this comment by a sponsor: "Automobile leasing agreements vary a great amount in their terms. People who lease automobiles often don't have a clear picture of all the terms and requirements, and this can lead to real trouble.... Our aim is to take the confusion and risk out of leasing a vehicle." Art Weissman, *'Vicious' dog reform, car-leasing standards approved by governor,* ASBURY PARK PRESS, December 25, 1994. The CPLA requires motor vehicle leases to be in writing and contain all terms and conditions of the lease. *N.J.S.A.* 56:12–62a. The legislation requires inclusion of many items in the lease to afford full disclosure of the lease terms to consumers. But the Legislature was also concerned that the lease terms might be confusing.

It is thus apparent that the Legislature's purpose in including the one-business-day review provision was to enable consumers to

substantially for the reasons expressed by the trial judge in his December 12, 2003 written decision.

review the lease and become familiar with its terms before signing it without being confronted by a dealer's "now or never" demand. By this requirement, the Legislature assured that a consumer would be presented with a fully-completed written lease containing all details of the intended lease transaction, with an opportunity to study it and without being pressured to sign it immediately or lose the deal.

Recognizing this purpose, we consider the waiver. The Division did not merely authorize a simple unqualified waiver by a prospective lessee. It conditioned the waiver upon a clear disclosure and explanation of key terms of the lease and acknowledgement of that information by the consumer. It required completion in full, with no blank spaces, of this form:

### WAIVER

I HAVE BEEN ADVISED THAT UNDER THE NEW JERSEY CONSUMER PROTECTION LEASING ACT, *N.J.S.A.* 56:12-60 et seq., I AM ENTITLED TO REVIEW THE LEASE CONTRACT FOR ONE 24–HOUR BUSINESS DAY BEFORE SIGNING. I CHOOSE TO WAIVE THAT RIGHT AND SIGN THE LEASE NOW.

_____         _____
LESSEE'S (CONSUMER'S)            LESSOR'S (DEALER'S)
INITIALS                        INITIALS

_____         _____
CO-LESSEE'S INITIALS
VEHICLE: Year ____ Make ____ Model _____
         VIN Number _____

THE LESSOR (DEALER) HAS REVIEWED THE FOLLOWING ELEMENTS OF THE LEASE DISCLOSURE WITH ME:

$ _____ MSRP (New vehicle Only)

$ _____ Total Cost of Options and Extras Not Included in MSRP

$ _____ Title and Registration for:
_____ First Year of Lease, or
_____ Full Term of Lease

$ _____ Gross Capitalized Cost of Vehicle

$ _____ Capitalized Cost Reduction, includes:

$ _____ Initial Cash Payment

$ _____ Trade-in Credit

$ _____ Rebates

$ _____ Total Capitalized Cost/Adjusted Capitalized Cost

$ _____ Residual Value

$ _____ Per Mile Over _____ Miles

$ _____ Amount of Periodic Payment

_____ Total Number of Periodic Payments

$ _____ Acquisition Fee

$ _____ Security Deposit

$ _____ Optional Warranty or Insurance Charge

It has been explained to me that if I terminate this lease early, I may have to pay significant costs.

_____   _____
(Lessee's and Lessor's Initials)

Excess Wear and Damage Charges have been explained to me.

_____   _____
(Lessee's and Lessor's Initials)

(For leases with purchase option): How I may purchase this vehicle at the end of the lease has been explained to me.

$_____ Total Fixed Cost
of Lease (No Op-    _____    _____
tion to to Purchase    (Lessee's and Lessor's Initials)
Vehicle) or
$_____ Total Cost of
Lease (With Op-
tion to
Purchase)

I UNDERSTAND THAT THIS IS A LEASE AGREE-
MENT AND NOT A PURCHASE AGREEMENT, THAT
THE PROPERTY BEING LEASED MAY NOT HAVE
ANY EQUITY OR OWNERSHIP VALUE TO ME AT THE
END OF THE LEASE AND THAT THE LEASED PROP-
ERTY BELONGS TO THE LESSOR.

Dated _____    _____

Lessee's (Consumer's) Signature

_____

Co-Lessee's Signature

_____

Lessor's Signature

[*N.J.A.C.* 13:45A–28.8(d).]

■ The standard by which we review the Division's interpreta-
tion of the CPLA and its promulgation of the waiver regulation is
circumscribed. A reviewing court "must give great deference to
an agency's interpretation and implementation of its rules enforc-
ing the statutes for which it is responsible." *In re Freshwater
Wetlands Prot. Act Rules,* 180 *N.J.* 478, 488–89, 852 *A.*2d 1083
(2004). We "recognize that an agency's specialized expertise
renders it particularly well-equipped to understand the issues and
enact the appropriate regulations pertaining to the technical mat-
ters within its area." *In re Protest of Coastal Permit Program
Rules,* 354 *N.J.Super.* 293, 330, 807 *A.*2d 198 (App.Div.2002). *See
also Saint Peter's Univ. Hosp. v. Lacy,* 372 *N.J.Super.* 170, 177,
856 *A.*2d 756 (App.Div.2004). "Consequently, agency rules are
accorded a presumption of validity and reasonableness . . . and the

challenging party has the burden of proving the rule is at odds with the statute." *In re Freshwater Wetlands Prot. Act Rules, supra,* 180 *N.J.* at 489, 852 *A.*2d 1083. *See also Saint Peter's Univ. Hosp., supra,* 372 *N.J.Super.* at 177–78, 856 *A.*2d 756.

Notwithstanding this judicial deference to an agency's rule-making authority, however, "a rule will be set aside if it is 'inconsistent with the statute it purports to interpret.' " *In re Freshwater Wetlands Prot. Act Rules, supra,* 180 *N.J.* at 489, 852 *A.*2d 1083 (quoting *Smith v. Div. of Taxation,* 108 *N.J.* 19, 26, 527 *A.*2d 843 (1987)). Thus, "[a]n agency may not arrogate to itself the power to achieve goals not within its legislative charge." *Saint Peter's Univ. Hosp., supra,* 372 *N.J.Super.* at 178, 856 *A.*2d 756.

Applying these principles, we conclude that the Division did not exceed its authority in promulgating the waiver regulation. We hold that the regulation is not inconsistent with, but in furtherance of, the CPLA's one-business-day review provision and its purpose. We base this conclusion on (1) the language of the review provision, (2) the comprehensive terms of the waiver regulation, (3) the fact that the consumer is not deprived by the waiver regulation of the right to the one-business-day review, and (4) the absence of an anti-waiver provision in the CPLA, notwithstanding the inclusion of such provisions in many other consumer protection statutes.

The language of *N.J.S.A.* 56:12–67b(1) appears mandatory in its provision that no lease "shall" be binding without the one-business-day review. However, *N.J.S.A.* 56:12–67b(2) provides that no dealer may permit a prospective lessee to take delivery "unless" provided with notice that the lessee is "entitled" to a one-business-day review. This provision appears to contemplate allowing delivery without the review as long as the lessee is properly informed of the right of review. Reading the two provisions together, and recognizing the purpose of the review-period provision that we have previously described, the statute is subject to a reasonable interpretation that the review period is waivable.

■ Although use of the word "shall" in a statute usually connotes a mandatory meaning, a directory meaning may be implied by "something in the character of the legislation or in the context which will justify a different meaning." *Union Terminal Cold Storage Co., Inc. v. Spence*, 17 *N.J.* 162, 166, 110 *A.*2d 110 (1954); *accord Cryan v. Klein*, 148 *N.J.Super.* 27, 30–31, 371 *A.*2d 812 (App.Div.1977), and *SAIJ Realty Inc. v. Town of Kearny*, 8 *N.J.Tax* 191, 195 (Tax 1986). Considering the purpose of the review period and reading sections (1) and (2) together, we are satisfied that the Division did not exceed its delegated authority in concluding that adherence to the review period was intended to be directory, so long as all statutorily-required notices are given and adequate safeguards are imposed as a condition of effective waiver.

We find unpersuasive the Cahills' reliance on *224 Jefferson Street Condo. Ass'n. v. Paige*, 346 *N.J.Super.* 379, 788 *A.*2d 296 (App.Div.2002), and *DiVigenze v. Chrysler Corp.*, 345 *N.J.Super.* 314, 785 *A.*2d 37 (App.Div.2001). In those cases we invalidated regulations by the Division that created jurisdictional bars not contained in the applicable consumer protection statutes, thus adding substance to and being inconsistent with the statutes. Such is not the case here. The waiver regulation complements the CPLA by filling in the conditions and circumstances in which a consumer, on notice that he or she is "entitled" to have a review period, may waive it without impugning the purpose of the statute. This is accomplished by providing for notification and explanation of key lease terms and still allowing the consumer to exercise the right to avail himself or herself of the review period.

We make one further observation about the statutory language. *N.J.S.A.* 56:12–67b(1) states that no lease shall bind a lessee *or* lessor unless the lessee *and* lessor have had one business day for review before signing it. Following the literal and mandatory interpretation advanced by the Cahills would seemingly lead to a conclusion that dealers could escape from their obligations under vehicle leases if they did not exercise their right of review for one

day before signing. We cannot ascribe to the Legislature an intention for such an absurd result in this consumer protection legislation. *Div. of Youth and Family Services v. K.F.*, 353 *N.J.Super.* 623, 635, 803 *A.*2d 721 (App.Div.2002).

In its expertise in the consumer protection field, the Division determined which provisions required by the CPLA to be included in a lease were of key importance and should be highlighted and explained in order to enable the consumer to understand the lease. It is presumed, of course, that the consumer will read the lease. The key provisions are accounted for in the waiver form developed by the Division. After reading the lease, reviewing the waiver form with the dealer, and receiving all of the explanations required by the form, the consumer has still not made a commitment to waive the review period and sign the lease on the spot. If still unsure about his or her understanding of the lease terms, or, for that matter, whether to enter into the transaction at all, the consumer retains the option of not signing the waiver form or lease, taking them home for further consideration, and, if still wishing to enter into the lease, returning the next business day to complete the transaction. The dealer cannot take the deal off the table or prevent the consumer from taking the documents out of the dealership.

The consumer's CPLA review right has not been impaired. Indeed, it has been enhanced by receiving additional highlighted information and explanations in reviewing with the dealer the proposed waiver form along with the lease itself. There is nothing in this process that is inconsistent with the purpose of the CPLA's waiver provision.

In proposing the regulation, the Division expressed similar sentiments in its summary:

> The proposed new rule would permit the lessee to sign a written waiver waiving his or her right to review the lease for one business day and to sign the lease contract at the time of negotiation. Prior to both parties signing the waiver form, the lessor would be required to review a list of disclosures contained in the lease with the lessee. Those disclosures include: [here, all of the items on the waiver form are listed]. The waiver option will allow consumers who seek to obtain "spot" or

instant delivery of a leased vehicle to obtain the same. It is important to note that the option to review the lease for one business day before signing the contract still exists for all prospective lessees. The proposed regulation simply gives the prospective lessee the choice to waive the one business day review and sign the lease contract at the time of negotiation.

[27 *N.J.R.* 4130(a) (November 6, 1995).]

Finally, we are persuaded that the regulation is not inconsistent with the statute because of the absence in the statute of an anti-waiver provision. Generally, of course, individuals may waive a right, without regard to whether its source is constitutional, statutory, contractual, or otherwise, so long as the individual had full knowledge of the right and intentionally surrendered it. *See County of Morris v. Fauver,* 153 *N.J.* 80, 104–05, 707 *A.*2d 958 (1998). However, "[l]egislation intended to secure general objectives of public policy or morals cannot be circumvented by private agreements." *Soricelli v. Bd. of Review,* 46 *N.J.Super.* 299, 311, 134 *A.*2d 723 (App.Div.1957). "Statutory provisions designed for the benefit of individuals may be waived, but where the enactment is to secure general objects of policy or morals, no consent will render a non-compliance with the statute effectual." *Freeman v. Conover,* 95 *N.J.L.* 89, 92, 112 *A.* 324 (E. & A.1920) (quoting *Quick v. Corlies,* 39 *N.J.L.* 11 (Sup.Ct.1876)). Waiver of a statutory right, in other words, will not be allowed where it "would violate a public policy expressed in the statute." *City Hall Bldg. & Loan Ass'n. of Newark v. Florence Realty Co.,* 110 *N.J.Eq.* 12, 14, 158 *A.* 506 (Ch.1932).

We reject the argument that waiver of the CPLA's review period violates the broad public policy of protecting consumers. For the reasons we have already stated, we conclude that waivers do not violate the CPLA's purpose of establishing procedures to enable consumers to be adequately informed of the lease terms before signing the lease without being subjected to a "now or never" dealer tactic.

Our conclusion that the Legislature did not intend to deprive informed consumers of the opportunity to take "spot" delivery of their leased vehicle is bolstered by the fact that the Legislature

has included in many consumer protection statutes anti-waiver provisions, but did not do so in the CPLA. *See, e.g., N.J.S.A.* 56:12–48 (Lemon Law) ("Any agreement entered into by a consumer for the purchase or lease of a new motor vehicle which waives, limits or disclaims the rights set forth in this act shall be void as contrary to public policy."); *N.J.S.A.* 56:8–45b (Health Club Services Act) ("Any waiver by the buyer of the provisions of this act is void."); *N.J.S.A.* 46:8–24 (Tenant Security Deposit Act) ("Any provision of such a contract, lease or agreement whereby a person who so deposits or advances money waives any provision of this act is absolutely void."); *N.J.S.A.* 56:12–16 (Truth–in–Consumer Contract, Warranty and Notice Act) ("No consumer contract, warranty, notice or sign, as provided for in this act, shall contain any provision by which the consumer waives his rights under this act."). Indeed, some statutes criminalize attempts to obtain waivers. *See, e.g., N.J.S.A.* 17:16C–61.8 (Door–to–Door Retail Installment Sales Act) ("Any retail seller ... who attempts to secure a waiver of the retail buyer's rights under this act ... shall be a disorderly person and, upon conviction thereof, shall be subject to a fine of not more than $500.00 for each offense."); *N.J.S.A.* 17:16C–102 (Door–to–Door Home Repair Sales Act) ("Any home repair contractor ... who attempts to secure a waiver of the owner's rights under this act ... shall be a disorderly person and, upon conviction thereof, shall be subject to a fine of not more than $500.00 for each offense.").

Affirmed.