UNION TERMINAL COLD STORAGE COMPANY, INC., PLAIN-
TIFF-APPELLANT, v. DONALD SPENCE, DIRECTOR OF
FINANCE, ETC., DEFENDANT-RESPONDENT.

Argued November 22, 1954—Decided December 20, 1954.

*Mr. Mark A. Sullivan, Sr.,* argued the cause for the appellant.

*Mr. Leo Rosenblum* argued the cause for the respondent (*Mr. John B. Graf,* attorney).

The opinion of the court was delivered by

OLIPHANT, J.   This is an appeal from a judgment of the Superior Court, Law Division, entered in favor of the defendant-respondents and against the plaintiff-appellant.   The

cause was certified here on our own motion under *R. R.*
1:10–1(*a*).

The action was instituted by a complaint in lieu of pre-
rogative writ (*mandamus*) against the director of revenue
and finance and the City of Jersey City to compel them to
comply with the provisions of *N. J. S. A.* 54:2–43 to allow
a credit on the taxes due and owing for the year 1953 in
accordance with a judgment of the Division of Tax Appeals
entered May 29, 1953.

The statute in question reads as follows:

"Where a judgment final has been rendered by the Division of
Tax Appeals in the State Department of Taxation and Finance
involving real property such judgment shall be conclusive and bind-
ing upon the municipal assessor and the taxing district, parties to
such appeal, for the assessment year and for the two assessment
years succeeding the assessment year covered by the final judgment,
except as to changes in the value of the property occurring after
the assessment date. Where such changes are alleged, the petition
of appeal shall specifically set forth the nature of the changes relied
upon as the basis for such appeal. *L.* 1946, *c.* 161, *p.* 729, § 14,
supplementing *Title* 54, *c.* 2."

The property in question was assessed by the City of
Jersey City for the year 1951 at a total value of $530,000.
The plaintiff-appellant took an appeal to the Hudson County
Board of Taxation which affirmed the assessment, and from
this affirmance it appealed to the Division of Tax Appeals
which tribunal reduced the assessment to a valuation of
$380,652 on the date above stated. During the pendency
of the appeal the city continued to assess the real estate for
$530,000 for the years 1952 and 1953. The plaintiff took
an appeal to the county board from the assessment of 1952
but did not take a similar appeal from the 1953 assessment
by the city.

However, the plaintiff paid all taxes as assessed by the city
as they became due quarterly, up to and including the third
quarter of 1953. On October 30, 1953, which was subsequent
to the judgment of the State Division of Tax Appeals on
the 1951 assessment, it paid to the city the sum of $2,575.58,
which was the balance due for the year 1953 at the current

tax rate as figured on the assessment of the property as reduced by the final judgment of the Division of Tax Appeals for the year 1951. The City Collector of Jersey City accepted this payment but refused to give a receipt showing that all taxes for the year 1953 had been paid on the property.

The action was filed to compel the defendant, the director of revenue and finance, "to change the assessment figures on said lot for 1953 to accord with the judgment of the Division of Tax Appeals for the year 1951 and to change his tax books so as to show full payment of said taxes for the year 1953." Various defenses were set up by the city contending a lack of authority to issue a receipt for any tax bill in less than the full payment of the amount shown on the books and records of the city and alleging lack of authority in various offices to comply with the statute. These defenses are predicated on the theory that the judgment of the Division of Tax Appeals entered on May 29, 1953 was subsequent to the time the 1953 assessment was made by the local assessor on January 10, 1953 (*R. S.* 54:4–35), and corrected and confirmed as a final assessment by the county board on April 1, 1953 (*R. S.* 54:4–55), and that no appeal had been taken to the county board from the 1953 assessment.

As to the latter point, the judgment of the Division of Tax Appeals became binding on the municipality from its date, May 29, 1953, as will be pointed out hereafter; therefore there would be no necessity for taking an appeal to the county board prior to August 15, 1953 (*R. S.* 54:3–21). The principal defense of the city, however, was the contention of the defendant-respondent that the plaintiff-appellant could not avail itself of the provisions of the statute without having first exhausted all administrative procedures.

The trial court, in granting summary judgment in favor of the defendant-respondent, agreed with such contention and held that in order for the appellant-taxpayer to have the benefit of the statute he must have appealed to the county board in accordance with the regular administrative proceeding established in the Tax Act, and this appeal must be taken within time and in proper form.

With this conclusion we are not in agreement since we think it is not in accord with the legislative intention as expressed in the statute, and the legislative intention is controlling in such a situation. This is the so-called "freeze" statute, and in *City of Newark v. Fischer*, 8 *N. J.* 191, *page* 199 (1951), Mr. Justice Wachenfeld clearly explained the mischief the statute was intended to remedy when he said, for this court:

"The evil which the 'freeze' statute sought to remedy was repeated yearly increases in the assessed value of property, not related to or justified by any changes increasing its market value, and resulting in harassment of the taxpayer, subjecting him to the trouble and expense of annual appeals to the county tax board."

When a statute such as this alters and amends the previous law and changes rights of action or creates new rights of action, it is important in discovering the intention of the Legislature to ascertain the old law, the mischief and the proposed right of remedy. *Blackman v. Iles*, 4 *N. J.* 82, at *page* 89 (1950), and the cases cited there.

It is also a fundamental rule of statutory construction that every requirement of the act must have the full effect the language imports unless such interpretation of the words will lead to great inconvenience or subversion of some important object of the act or would lead to an absurdity. *Proprietors of Morris Aqueduct v. Jones*, 36 *N. J. L.* 206 (*Sup. Ct.* 1873), affirmed 37 *N. J. L.* 556 (*E. & A.* 1875).

In determining whether an act is imperative and mandatory or merely directory there is a presumption that the word "shall" (such word appears in this statute) is used in an imperative and not a directory sense, and while this presumption is not a conclusive one it can only be overthrown by something in the character of the legislation or in the context which will justify a different meaning. *Haythorn v. Van Keuren & Son*, 79 *N. J. L.* 101 (*Sup. Ct.* 1909); *City of Jersey City v. State Board of Tax Appeals*, 133 *N. J. L.* 202 (*Sup. Ct.* 1945). We find no such factors or evidence present here.

The statute in clear and unequivocal language states:

"Where a judgment final has been rendered by the Division of Tax Appeals * * * involving real property such judgment *shall be conclusive and binding upon the municipal assessor and the taxing district,* parties to such appeal, *for the assessment year and for the two assessment years succeeding the assessment year covered by the final judgment,* * * *." (Italics supplied)

The only variation is found in the exception of the statute which refers to changes in the value of the property occurring after the assessment date, and where such changes occur they must be taken advantage of by an appeal to the county board. It is admitted no change as to valuation occurred here.

To insist, as the city does, that during the pendency of such appeal the taxpayer should appeal for each of the next two successive years and then on the coming down of the judgment make a further application to the county board would defeat the very purpose of the statute, which was to prevent the harassment of the taxpayer and reduce the number of appeals that had to be taken in each year to the various statutory and administrative tribunals; and to compel the taxpayer to have recourse to the courts, as was done in this case, is simply a further harassment of the taxpayer that the statute intended to obviate rather than encourage.

As to the argument asserted below and re-asserted here that certain officials in the taxing department of the city were without specific powers to act in such a situation, this ignores a statutory section which was enacted to meet just such a situation. Here the facts are that the taxpayer had paid in full the tax due on the 1951, 1952 and 1953 assessment at the current rate up to and including the third quarter of 1953.

*N. J. S. A.* 54:4–8.2 provides as follows:

"If any taxpayer shall have paid the taxes upon any assessment of property under the provisions of chapter four of Title 54 of the Revised Statutes and shall, upon appeal, have obtained a judgment of the county board of taxation granting a reduction in the said assessment from which neither the taxpayer nor the municipality

shall have duly appealed, or shall have obtained a judgment of the State Board of Tax Appeals granting a reduction in such assessment or confirming a reduction granted by the county board or any part thereof, *such taxpayer may claim and the collector of taxes of the municipality shall allow a credit, in an amount equal to the appropriate refund incident to such reduction of said assessment, against any taxes then due or to become due on such property;* provided, such property is at that time assessed against the same owner as it was at the time the appealed assessment was made. *If said assessment shall be further litigated the taxes found to be due as a result of such litigation, either by way of increase or reduction, shall be adjusted in like manner.* L. 1940, c. 229, p. 901, § 1." (Italics supplied.)

Under this statute the tax collector is authorized and directed to allow a credit to the taxpayer "in an amount equal to the appropriate refund incident to such reduction of said assessment, against any taxes then due or to become due on such property."

The judgment of the trial court is reversed and on presentation of a certified copy of the judgment of the Division of Tax Appeals the director of revenue and finance and the collector of the City of Jersey City are ordered to allow the credit sought by the taxpayer on October 30, 1953, and to issue a receipt in full for the taxes due for the year 1953 in accordance with the command of *N. J. S. A.* 54:2–43 and *N. J. S. A.* 54:4–8.2, which are *in pari materia* with respect to the problem here presented.

Burling, J. (concurring). I am in agreement with the result attained by the majority of the court, namely, reversal of the summary judgment for the defendants. However, I favor a divergent result as to the effect and method of application of *R. S.* 54:2–43, as amended by *L.* 1946, c. 161, *sec.* 14.

It seems to me that *R. S.* 54:2–43, as amended, *supra*, is mandatory but not self-executing. In other words, it is binding (if there is no increase in property value) upon the assessor in the *making* of assessments (for the two assessment years succeeding the assessment year subjected to adjudication).

The collector of taxes is not authorized by *R. S.* 54:2–43, as amended, *supra,* on his own initiative to collect a reduced tax from the taxpayer. The collector's statutory duties are to complete and deliver tax bills as soon as the tax duplicate is delivered to him. *R. S.* 54:4–64. The duplicate must be delivered to him on or before April 1. *R. S.* 54:4–55. The collector must enter the date and amount of payments made on the duplicate and in his cash book. *R. S.* 54:4–71. On March 1 of the succeeding year he must file with the treasurer of the taxing district a statement of the amount of taxes received and of the amount remaining unpaid. *R. S.* 54:4–91, as amended by *L.* 1944, *c.* 115, *sec.* 1.

The majority held that *L.* 1940, *c.* 229, *sec.* 1, *N. J. S. A.* 54:4–8.2 authorizes the collector to reduce taxes for subsequent years under *R. S.* 54:2–43, as amended, *supra,* in addition to collecting the adjudicated reduced tax for the assessment for the year appealed. It seems to me it applies only to the taxes for the assessment year appealed.

However, statutory authority for correction of the situation exists. Under *R. S.* 54:4–99 and *R. S.* 54:4–100, as amended by *L.* 1949, *c.* 202, *sec.* 1, the municipal governing body is authorized to make abatement, revision, adjustment and settlement of past due taxes, especially where the taxes are "illegal in whole, or in part." The provisions of *R. S.* 54:4–99, *supra,* and *R. S.* 54:4–100, as amended, *supra,* seem to require the municipal governing body to act only on application by the taxpayer. The action of the municipal governing body is qualified by the authority vested in the governing body, *R. S.* 54:4–99, to *effectuate* the adjustment of taxes "as it shall deem equitable and just and be for the best interests of the municipality." Under the circumstances of the present case, the quoted language appears to refer to the mode of allowance of adjustment of taxes.

In the present matter the taxing district, *i. e.,* the City of Jersey City, was added as a defendant. It has not contended that the immediate reduction of the taxes in question to conform to the legal amount of the assessment under *R. S.*

54:2–43, *supra,* would be opposed to the best interests of the municipality.

Since it is admitted upon the appeal that there was no change in the value of the property assessed, under the circumstances of this case, for the reasons hereinbefore expressed, I would reverse the judgment of the Superior Court, Law Division, and remand the matter for entry of judgment for the plaintiff requiring the taxing district, the City of Jersey City, to abate the past due taxes of the plaintiff involved in this appeal to the extent that they are illegal in part under *R. S.* 54:2–43, *supra.*

BURLING, J., concurring in result.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.