118 N.J. Super. 129 (1972)
286 A.2d 725
TOWNSHIP OF WAYNE, RESPONDENT-APPELLANT,
v.
ROBBIE'S, INC., PETITIONER-RESPONDENT, AND DIVISION OF TAX APPEALS, DEPARTMENT OF TREASURY, STATE OF NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 20, 1971.
Decided January 27, 1972.
*131 Before Judges COLLESTER, MINTZ and LYNCH.
Mr. Robert S. Moraff argued the cause for appellant (Mr. Joseph J. De Luccia, Township Attorney, attorney).
Mr. John E. Wolf argued the cause for respondent (Mr. Abram J. Precker, attorney).
Mr. Herbert K. Glickman, Deputy Attorney General, submitted a statement in lieu of brief for Division of Tax Appeals (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney).
PER CURIAM.
This case involves an interpretation of the so-called "Freeze Act" (N.J.S.A. 54:2-43) as applied to a situation where a municipality and the taxpayer entered into a consent judgment in the Division of Tax Appeals as to the true value of the property involved for the tax years 1967 and 1968. More particularly, the issue is whether such judgment "froze" the assessment for the year 1969.
Appellant first argued that the consent judgment for the years 1967 and 1968 was entered under a mistake of fact on the part of the municipal authorities. That contention has now been withdrawn and there remains only the issue as to whether or not the 1969 assessment shall, because of the *132 Freeze Act, be identical with the judgment for the years 1967 and 1968.
The assessments, the county Tax board action, and the action of the Division of Tax Appeals for the years involved[1] were as follows:

 Original assessment Cty. Bd. Division
1967 land 37,000 37,000 37,000
 bldg. 74,700 74,700 70,000
 _______ _______ _______
 total 111,700 111,700 107,000
1968 land 107,000 37,000 37,000
 bldg. 74,700 74,700 70,000
 _______ _______ _______
 total 181,700 111,700 107,000
 _______ _______ _______
1969 land 107,000 107,000 37,000
 bldg. 74,700 70,000 70,000
 _______ _______ _______
 total 181,700 177,000 107,000

In the Division of Tax Appeals appellant municipality claimed that its proofs would bring the case within the exception to the "freeze," i.e., that there were "changes in the value of the property occurring after the assessment date." N.J.S.A. 54:2-43. It offered to prove that the value of the subject land had increased in value after the relevant date. We are told that such increase has occurred because of the development of the Willowbrook Shopping Center, "one of the world's largest shopping centers," in the vicinity of the subject property. The Division judge rejected the municipality's proffer of proof of such increase in value, saying that "the grounds set forth by Wayne, namely, the *133 increase in the value of the land, in the premises in question in this surrounding land [sic] greatly increased in value is not one of the exceptions set forth in the statute." No findings of fact were made and the foregoing is the only explanation we have for the court's conclusions. In any event, we hold that changes in the value of the land after the assessment date, if proved, would avoid the "freeze" as to 1969. Cf. Hudson-Webber Realty Co. v. City of Southfield, 18 Mich. App. 66, 170 N.W.2d 510 (Ct. App. 1969). Our statutory language can bear no other construction.
For the first time, at oral argument, respondent taxpayer argues that the foregoing exception does not apply here because N.J.S.A. 54:2-43 would permit the municipality to offer proof of change only if the municipality had filed a petition of appeal herein, and had stated in its petition the nature of the changes  this by reason of the sentence appearing in the statute and reading as follows:
Where such changes are alleged, the petition of appeal shall specifically set forth the nature of the changes relied upon as the basis for such appeal.
Here the municipality did not take any appeal and, of course, no petition of appeal which sets forth the "nature of the changes relied upon for such appeal" was filed. But there was nothing from which it could have appealed. For the tax year 1969 the municipality fixed the original assessment of the land at $107,000 and the county board affirmed. Obviously, the municipality was not "aggrieved" thereby and therefore had no occasion to appeal to the Division. N.J.S.A. 54:2-39.
What, then, is the significance of the reference to the "petition of appeal" and the "nature of the changes relied upon as the basis for such appeal," as provided in the statute? Respondent taxpayer contends that unless the municipality has filed an appeal it cannot prove changes in value, for the exception is not "triggered" until such a petition is filed.
*134 In seeking to ascertain the legislative intent it is appropriate to consider the circumstances at the time the first bill to establish the "freeze" was introduced in the Legislature. Cf. Crater v. Somerset County, 123 N.J.L. 407, 413 (E. & A. 1939); see also, State v. Spindel, 24 N.J. 395, 402-403 (1957); Grogan v. DeSapio, 11 N.J. 308, 323 (1953). That occurred on January 21, 1946, in the form of Assembly Bill 68. The Legislature was at that time fully aware of the then recent history of the City of Jersey City having restored thousands of assessments which had in the previous tax year been set aside by the Hudson County Board of Taxation. See Jersey City v. Division of Tax Appeals, 5 N.J. Super. 375 (App. Div. 1949), aff'd 5 N.J. 433 (1950). When the county board set aside the city's assessments the city filed a total of approximately 70,000 appeals for the tax years 1943, 1944 and 1945. It was in this climate that the first "freeze" bill was introduced. It was opposed in the Legislature by the leading Assemblymen from Jersey City, on the ground that "it perpetuated a decision by [the Division of Tax Appeals] which bars taxing districts from appealing reductions which have been granted to taxpayers by County Tax Boards until after three years." Newark Evening News, March 13, 1946. The decision referred to related to the thousands of appeals which had been taken by Jersey City and had been decided September 4, 1945 (In re Jersey City, 23 N.J. Misc. 311 (Bd. Tax App. 1945); see also, 24 N.J. Misc. 315 (Bd. Tax App. 1946)), only a few months before the introduction of the "freeze" bill. Obviously, then, the Legislature, in passing the act, had in mind those graphic instances where a municipality had, in fact, filed appeals. It therefore provided for the contents of the petition to be filed in such cases. It was not concerned with instances where a municipality had no occasion to file an appeal.
In Giordano v. City Commission, Newark, 2 N.J. 585 (1959), it was said:
In construing a statute, where ambiguity exists or a literal interpretation would lead to anomalous or absurd results, the spirit of the *135 law controls the letter. Jensen v. Woolworth, 92 N.J.L. 529 (E. & A. 1919); Bourne v. Levine, 100 N.J. Eq. 141 (Ch. 1926). See, also, 3 Sutherland Statutory Construction, § 6802 [at 594]
To hold that the merely procedural requirements as to what shall be contained in a petition of appeal are to be literally applied when, as here, the municipality did not  and could not  file such an appeal would defeat the spirit and substantive intent of the statute and lead to anomalous and absurd results. Such construction cannot be made. Robson v. Rodriquez, 26 N.J. 517, 528 (1958).
We are convinced that the legislative intent in adopting the "Freeze Act" was that, if changes in value were to occur after an assessment date, they were to be applied whether or not the municipality was the party which, in fact, had taken the appeal. The exception in that respect is as much a part of the statute as the "freeze" itself. And such construction conforms with the statutory obligation to assess with "true value" as a polestar, subject, of course, to whatever ratio is to be applied in a particular municipality. Cf. Baldwin Construction Co. v. Essex County Board of Taxation, 16 N.J. 329 (1954); N.J.S.A. 54:4-2.25.
We therefore hold that the Division erred in refusing to permit the city to offer proof of "changes in value" after the applicable assessment date.
Reversed and remanded for a plenary hearing.
NOTES
[1] The Division figures (total of $107,000) for 1967 and 1968 reflect the settlement embodied in the consent judgments. The record before us is unclear as to whether the city land assessment for 1968 was $107,000 or $37,000. The resolution of that ambiguity is not necessary to a treatment of the issue before us and therefore we will not consider it further.