239 N.J. Super. 130 (1989)
570 A.2d 1246
AMERICAN HYDRO POWER PARTNERS, L.P., A DELAWARE LIMITED PARTNERSHIP, PLAINTIFF-RESPONDENT,
v.
CLIFTON CITY (PASSAIC COUNTY), DEFENDANT-APPELLANT, AND ATTORNEY GENERAL OF NEW JERSEY, INTERVENOR-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 31, 1988.
Decided January 23, 1989.
*131 Before Judges J.H. COLEMAN, BAIME and D'ANNUNZIO.
Leon Klein argued the cause for appellant, Clifton City (Passaic County), (City of Clifton Law Department, attorneys; Leon Klein, on the brief).
Harry Haushalter, Deputy Attorney General, argued the cause for intervenor-appellant, Attorney General of New Jersey (W. Cary Edwards, Attorney General, attorney; James J. Ciancia, Assistant Attorney General, Of Counsel; Harry Haushalter, on the brief).
Kevin J. Coakley, argued the cause for respondent (Connell, Foley & Geiser, attorneys; Kevin J. Coakley Of Counsel, Kevin J. Coakley and Timothy E. Corriston, on the brief).
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
City of Clifton (Clifton) appeals a Tax Court decision which ruled that the failure to timely file an added assessment list precludes an added assessment for the year in question, except through the omitted assessment procedure. 9 N.J. Tax 259 (Tax Ct. 1987).
American Hydro Power Partners, L.P. (American) operates a dam and hydro electric plant on the Passaic River in Clifton on lands leased from the Dundee Water Power and Land Co. (Dundee). Beginning in 1985, American made certain improvements to its dam and plant which were completed in April 1986. American's representatives and Clifton's tax assessor discussed the taxability of these improvements at least as early as April 1986. American contended, and continues to contend, that the improvements are not subject to the real property tax because they constitute personal property or are exempt as a dam owned by a public utility. N.J.S.A. 54:30A-49 et seq.
On November 13, 1986, the assessor filed an added assessment list with the Passaic County Board of Taxation. The list *132 covered various properties in Clifton. It included an added assessment of $1,185,600 for American's improvements, thereby generating an additional tax liability of $39,045.76. The County Tax Board certified Clifton's added assessment list on November 14, 1986. Dundee received a bill for the additional tax on December 11, 1986.
Clifton's attempt to assess American's improvements violated three statutory time frames. Improvements to real property effected after October 1 of a given year and completed between January 1 and October 1 of the following year (the tax year) are assessed as added assessments for the tax year. N.J.S.A. 54:4-63.3.[1] The assessor's added assessment list is to be filed in duplicate with the county board of taxation on October 1 of the tax year. N.J.S.A. 54:4-63.5. The statute requires the county board to examine the added assessment list and make any necessary revisions or corrections and deliver a certified copy of the "corrected, revised and completed" duplicate to the municipality's tax collector on or before October 10 of the tax year. Ibid. The tax collector is required to prepare, complete and deliver tax bills to the taxpayer based on the added assessment to the taxpayer "at least one week before *133 November first." N.J.S.A. 54:4-63.7. The tax is payable on November 1 of the tax year. N.J.S.A. 54:4-63.8. Thus, the statute creates a 30-day window of opportunity to begin and to perfect the added assessment process.
As previously indicated, the assessor filed the added assessment list on November 13, 1986. Therefore, no part of the statutory assessment process was commenced within the 30-day window of opportunity. Indeed, Dundee received the tax bill eleven days after the December 1 deadline for filing an appeal from the added assessment. N.J.S.A. 54:4-63.11. Anticipating this anomaly, the county board had asked the Treasury Department, Division of Taxation, for an extension of the time for appeal. By its letter addressed to the tax board dated December 16, 1986, the Division granted the extension to December 31, 1986.[2] The record is devoid of any indication that Dundee or American had been informed of the extension of the time limit for appeal.[3]
American received the tax bill from Dundee on December 22, 1986 and forwarded the bill to its attorneys who received it on January 2, 1987. American's request for additional time to file an appeal was denied by the county board in its letter of February 10, 1987. On February 17, 1987, American filed a two-count complaint with the Tax Court seeking an order extending the time to appeal (first count) and, alternatively, seeking a judgment voiding the added assessment due to Clifton's *134 failure to adhere to the added assessment statute (second count).
On Clifton's motion to dismiss the complaint on the ground that it had been untimely filed with the Tax Court, the Tax Court ruled that the filing was timely, that it had jurisdiction and that the added assessment was invalid because Clifton had violated the added assessment statute. Clifton timely filed a notice of appeal and we granted the Attorney General's application to intervene as an appellant.
Resolution of the substantive issue depends on an interpretation of N.J.S.A. 54:4-58 (hereinafter § 58). That statute provides:
No tax, assessment or water rate imposed or levied in this state shall be set aside or reversed in any action, suit or proceeding for any irregularity or defect in form, or illegality in assessing, laying or levying any such tax, assessment or water rate, or in the proceeding for its collection if the person against whom or the property upon which it is assessed or laid is, in fact, liable to taxation, assessment or imposition of the water rate, in respect to the purposes for which the tax, assessment or rate is levied, assessed or laid.
Clifton and the Attorney General contend that § 58 is to be applied literally, thereby rescuing the added assessment at issue despite Clifton's egregious violation of the statutory scheme.
Section 58 was first enacted in 1881. L. 1881, c. 157. The language has not changed in any material respect, though chapter 157's provisions are now divided among § 58, N.J.S.A. 54:4-59 and 60.[4] Section 58 has rescued defective assessments *135 in a variety of contexts. See generally Becker v. Little Ferry, 126 N.J.L. 338, 19 A.2d 657 (E. & A. 1941) (tax sale upheld though buildings erroneously assessed in tenant's name); Conover v. Honce, 46 N.J.L. 347 (E. & A. 1884) (assessment upheld against contention that it was made in name of a decedent and contained an inadequate description); P.J. Ritter Company v. Bridgeton, 135 N.J.L. 22, 50 A.2d 1 (Sup.Ct. 1946) (section 58 saved water rate increase unlawfully established by resolution instead of ordinance), aff'd o.b., 137 N.J.L. 279, 59 A.2d 422 (E. & A. 1948); H.P. Varley Association, Inc. v. McFeeley, 118 N.J.L. 463, 193 A. 787 (Sup.Ct. 1937) (error in assessing building solely to defendant did not prevent apportionment of taxes between plaintiff and defendant); Manistee Iron Works Company v. Raritan Tp., 12 N.J. Misc. 143, 170 A. 39 (Sup.Ct. 1934) (personal property assessment upheld though made in name of person other than owner); Fidelity Trust Company v. Essex Board of Taxation, 90 N.J.L. 51, 100 A. 334 (Sup.Ct. 1917) (court corrected error in assessing personal property in name of executor rather than in decedent's name); Angle v. Lantz, 53 N.J.L. 578, 22 A. 49 (Sup.Ct. 1891) (though mortgage assessable by Town of Belvidere, mortgagee's domicile, Oxford Township's assessment of mortgage directed to be added to Belvidere's ratable property duplicate and collected by Belvidere); Pfeiffer v. Miles, 48 N.J.L. 450, 4 A. 429 (Sup.Ct. 1886) (insufficient description does not invalidate the tax though it may prevent creation of lien and collector may apply to court for an amendment to the description); Kullman Dining Car Company, Inc. v. E. Paterson, 97 N.J. Super. 536, 235 A.2d 499 (Law Div. 1967) (personal property assessment in other than owner's name upheld).
Despite very broad language describing § 58's scope ("its effect is to destroy, root and branch, the power to defeat such a *136 proceeding except upon a meritorious ground," Conover v. Honce, supra, 46 N.J.L. at 348) the defects involved in most of these decisions were "purely technical." Ibid.
Other decisions, addressing more substantial procedural deviations, took a more measured approach to § 58's scope. In Duke Power Co., v. State Board of Tax Appeals, 129 N.J.L. 449, 30 A.2d 416 (Sup.Ct. 1943), aff'd o.b. 131 N.J.L. 275, 36 A.2d 201 (E. & A. 1944), the court, in dictum, stated that § 58 did not "apply where the statute for the addition of property omitted from the assessment is not complied with." Id. 129 N.J.L. at 457, 30 A.2d 416, citing Mitsch v. Tp. of Riverside, 86 N.J.L. 603, 92 A. 436 (E. & A. 1914) and Shillingsburg v. Greenwich, 83 N.J.L. 129, 83 A. 644 (Sup.Ct. 1912).
In Mitsch an assessment of omitted property was set aside because the assessor failed to give the owner notice. The omitted property assessment in Shillingsburg was set aside for lack of notice and because the omitted assessment was made by the board president rather than by the county board, as required by statute.
Duke Power Co., Mitsch and Shillingsburg limited § 58's reach, despite the statute's broad language. In doing so, they gave effect, sub silentio, to the principle that "statutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as `consonant to reason and good discretion.'" Schierstead v. Brigantine, 29 N.J. 220, 230, 148 A.2d 591 (1959) (citations omitted). And "where a literal reading of the statute leads to absurd consequences `the court must restrain the words' and seek the true legislative intent." Id. at 231, 148 A.2d 591, citing In re Merrill, 88 N.J. Eq. 261, 102 A. 400 (Prerog.Ct. 1917). In construing a statute we assume that the Legislature intended a reasonable approach, and the statute should be construed to effect a reasonable approach. Roman v. Sharper, 53 N.J. 338, 341, 250 A.2d 745 (1969). Applying these principles we conclude that § 58 has boundaries and does not excuse every breach of assessment law. To rule otherwise *137 would give assessing authorities unlimited power to avoid and evade a carefully crafted, coherent and sequential system for the assessment and collection of taxes. The narrow issue is whether Clifton's violation of the added assessment statutes falls outside § 58's boundaries.
We have found no decisions involving the failure to even begin the assessment process during the mandated time for its beginning and completion. Ridgewood Elks Holding Corp. v. Ridgewood, 127 N.J.L. 295, 22 A.2d 266 (E. & A. 1941), is inapposite. In that case the taxpayer had appealed its 1937 assessment, contending that its property was exempt. The county tax board ruled that only part of the property was exempt, and Ridgewood appealed. Pending the municipality's appeal, the assessor assessed the property in 1938 and 1939 in compliance with the county board's decision. In March 1939 the State Board of Tax Appeals held that all the property was taxable. The assessor then changed the 1938 and 1939 assessments to conform with the state board's decision. Applying § 58 the Court upheld the new assessments, though late. Thus, Ridgewood involved the assessor's correction of an assessment previously made pending tax litigation.
In Haddon Hills Apts. North v. Haddon Tp., 31 N.J. Super. 124, 105 A.2d 916 (App.Div. 1954), the issue was whether an appeal from an added assessment had been timely filed. The added assessment was perfected on November 1, 1949 when the county board filed the certified tax list duplicate with the tax collector. The assessor had filed the list with the county board on October 4, 1949. The taxpayer contended that its appeal filed one year later, on December 1, 1950, was timely because the added assessment process had deviated from the statutory time frames. In affirming dismissal of the appeal this court determined that the assessment was valid as "all required official action had been completed on November 1, 1949." Id. at 128, 105 A.2d 916. Haddon Hills is factually distinguishable from the present case in which no action had been taken by November 1, 1986.
*138 We have previously characterized New Jersey's property tax scheme as coherent and sequential. It is also practical. The added and omitted assessment procedures are tools designed to protect municipal revenue sources by sealing cracks in the system. As we have already described, the added assessment process is a refinement which sweeps into the system properties and improvements not assessable on October 1 of the pre-tax year. Its scope is precisely defined.
The omitted assessment procedure is broadly applicable to "assess any taxable property omitted from the assessment for the particular year." N.J.S.A. 54:4-63.12; N.J.S.A. 54:4-63.31.[5] The omitted assessment procedure may be utilized in the tax year or "in the next succeeding year." N.J.S.A. 54:4-63.12 and 63.31. The omitted assessment procedure applies to any omission, regardless of cause, and is applicable to rectify a failure to properly utilize the added assessment procedure. Appeal of N.Y. State Realty & Terminal Co., 21 N.J. 90, 121 A.2d 21 (1956). In that opinion, the Court stated:
An added improvement by not being included in the tax assessment rolls pursuant to the procedure and during the time prescribed by the added assessment statutes thus becomes an omitted assessment and is governed by the provision of these latter sections; and what was not accomplished under one statute is accomplished under the other  the taxation of all property within the jurisdiction of this state annually at its true value [Id. at 99, 121 A.2d 21].
See Cherry Hill Indus. Properties v. Voorhees Tp., 186 N.J. Super. 307, 452 A.2d 673 (App.Div. 1982) (since added assessment procedure not utilized to correct erroneous farmland assessment, omitted assessment procedure could be used), aff'd as modified, 91 N.J. 526, 453 A.2d 673 (1982).
We conclude that the omitted assessment procedure should have been used to correct Clifton's failure to timely implement the added assessment statute and that § 58 is not applicable. Through its objective time periods and its fresh right of appeal, *139 the omitted assessment procedure gives structure to the correction of an assessment failure. Indeed, if § 58 is available to correct any assessment failure at any time, then the omitted assessment statutes are unnecessary. We do not perceive that to have been the legislative intent.
The contention that American's complaint in the Tax Court was untimely filed is without merit.[6] The complaint was filed within 45 days of the county board's denial of American's request for an extension of the time for appeal. N.J.S.A. 2A:3A-4.1(b)(1). The Tax Court had jurisdiction to entertain American's appeal because the added assessment exceeded $750,000. N.J.S.A. 54:3-21; N.J.S.A. 54:4-63.11.
Affirmed.
NOTES
[1] This statute provides:

When any parcel of real property has been sold by any municipality as not needed for public use, and the deed has been delivered between January 1 and October 1 in any year, or when any parcel of real property contains any building or other structure which has been erected, added to or improved after October 1 and completed between January 1 and October 1 following, the assessor shall, after examination and inquiry, determine the taxable value of such parcel of real property as of the first of the month following the date of delivery of such deed, or of such completion, and if such property was not assessed as of October 1 preceding or, if such value so determined exceeds the assessment made as of October 1 preceding, the assessor shall enter an assessment, as an added assessment against such parcel of real property, in the "Added Assessment List, 19 ...," which assessment shall be determined as follows: by multiplying the amount of such assessment or such excess by the number of whole months remaining in the calendar year after the date of delivery of such deed, or of such completion, and dividing the result by 12.
[2] The Division cited N.J.S.A. 54:3-21.4 as its authority to grant an extension. This statute specifically authorizes extensions in the event of a taxing district's failure to deliver a tax bill to a taxpayer before July 15. Therefore, by its terms, this statute is limited to appeals from regular assessments which are required to be filed by August 15 of the tax year. N.J.S.A. 54:3-21. However, the extension statute may be applicable to added assessment appeals through N.J.S.A. 54:4-63.11 which provides, inter alia, that "[i]n all other respects [added assessment appeals] shall be governed by the laws concerning appeals from real property assessments." We need not address the issue in this case.
[3] The tax bill stated that December 1 was the appeal deadline.
[4] N.J.S.A. 54:4-59 provides:

The court in which any action, suit or proceeding is or shall be pending to review any such tax, assessment or water rate shall amend all irregularities, errors or defects, and may if necessary ascertain and determine the sum for which the person or property was legally liable and by order or decree fix the amount thereof. The sum so fixed shall be the amount of tax, assessment or water rate for which the person or property shall be liable.
N.J.S.A. 54:4-60 provides:
The tax, assessment or water rate when so fixed shall be a first lien or charge upon the property and persons, and collectible in the manner provided by law, the same as if it had been legally levied, assessed or imposed in the first instance by the board or body attempting to make, impose or levy it. The court shall make a proper levy, imposition or assessment in all cases in which there may lawfully be an assessment, imposition or levy.
[5] The statutes establish two omitted assessment procedures. N.J.S.A. 54:4-63.12 through 63.25, the original method; N.J.S.A. 54:4-63.31 through 63.40, the alternate method.
[6] Only Clifton advances this contention.