DOUGHERTY, J.T.C.
AVR Realty Co. (“Taxpayer”) moves for an order “freezing”[1] the assessment of Block 644, Lot 1 for the tax year 1995 (a Freeze Year), at the Tax Court judgment value for tax year 1993 (the Base Year). The Base Year judgment was entered June 2, 1995 following a consolidated trial of Taxpayer’s 1992 and 1993 appeals. Those assessments were reduced as follows:
For Tax Year 1992
ORIGINAL ASSESSMENT COUNTY BOARD JUDGMENT TAX COURT JUDGMENT
Land $ 4,649,000 N/A $ 4,649,000
Impvts 10,235,100 6,182,000
Total $14,884,100 $10,831,000
For Tax Year 1993
ORIGINAL ASSESSMENT COUNTY BOARD JUDGMENT TAX COURT JUDGMENT
Land $ 4,649,000 N/A $ 4,649,000
Impvts 10,235,100 6,521,000
Total $14,884,100 $11,170,000
*554 The assessor set both the 1994 and 1995 assessments at land of $4,649,000, improvements of $10,235,100, for the same total of $14,884,100. When the 1993 Base Year judgment was entered, direct appeals for the 1994 and 1995 tax years were pending in the Tax Court. N.J.S.A. 54:3-21. The Freeze Act has been applied to the 1994 Freeze Year. AVR Realty Co., c/o Rose v. Cranford Tp., 294 N.J.Super. 294, 683 A.2d 235 (App.Div.1996), certif. denied, 148 N.J. 460, 690 A.2d 608 (1997).
The Township of Cranford (Cranford) opposes taxpayer’s application for the freeze, arguing that a change in value of the subject property occurred after October 1,1992 (the valuation date for the Base Year assessment) and before October 1, 1994 (the valuation date for the 1995 Freeze Year assessment). Cranford made the identical argument in opposition to the taxpayer’s 1994 Freeze Act application. The change in value is said to have resulted from: (i) a change in use of the motel portion of the improvements from rooms leased on a daily or weekly basis, to senior citizen assisted living quarters leased on an annual basis; and (ii) the construction of additional improvements. The Appellate Division concluded in the 1994 matter:
We have no doubt that a change in use, to the extent it may significantly affect the capitalization method of assessment, the method here used, may effect a substantial and meaningful change in value. So may a substantial addition to the improvements. Nevertheless, the [assessor’s] certification failed to show that these use and structural changes effected a change of value as of October 1,1993.
[Id. at 301, 683 A.2d 235]
The assessor’s certification filed in opposition to taxpayer’s 1995 application asserts that: (i) Taxpayer converted its 85,000 square foot, 180 room motel use to senior assisted living quarters after October 1, 1992; (ii) Taxpayer’s application for a braiding permit estimated a cost of $1,102,325 to complete renovations of the existing motel structure and construction of the new braiding (8,600 square feet of administrative offices, reception, dining, and lounge areas); and (hi) construction of the addition and renovations was concluded on or before November 4, 1993, when a temporary certificate of occupancy was issued. The assessor *555 further certifies that taxpayer’s response to a request for income and expense information, made pursuant to N.J.S.A. 54:4-34 for tax year 1995, indicated a net operating income allocated to the senior quarters as of October 1, 1994, of $1,102,000. The $1,102,-000 net does not, he certifies, include income from the banquet facility which continued to produce income in calendar year 1994. The assessor compares the senior quarters’ net operating income with the net operating income of $761,960 from the motel and banquet facilities, found in the 1993 Base Year trial. The $340,040 increase, (which would be even greater if the 1994 banquet income were deducted from the motel figures), Cranford argues, is sufficient to establish a prima facie change in value. Cranford thus seeks a plenary hearing on valuation. It is, Cranford argues, at that hearing that evidence of true value on October 1,1994, would be presented by both parties. In effect, that hearing would be no different from any other valuation trial, except that Cranford would carry the burden of proof as to valuation while that burden generally falls upon the taxpayer, as plaintiff.
The certification of Cranford’s appraisal expert (identical to that filed in the 1994 tax appeal) opines that an increase of $340,040 in net operating income translates into an increase in true value for tax year 1995. The expert selects a range of interest rates to be applied to net operating income under the income capitalization approach to value. The low rate is 11.25%; the high rate is 12.25%. No explanation is provided in the certification for the selected rates. Nor has an allocation of the seniors quarters income among shelter, personal care and meals components, been undertaken at this stage. The “opinion of value increase” is rough, at best.
Applying each of the high and low rates to the $1,102,000 net operating income from the 1994 seniors operations indicates, the expert continues, a true value range as of October 1, 1994 of $9,000,000 to $9,800,000. The 1993 Base Year judgment was based upon the determination that the true value of the subject as of October 1,1992 was $11,774,000. That value was composed of a value for the office use of $5,234,000 and a value for the motel use *556 of $6,540,000. Because Cranford’s average ratio for tax year 1993 was 94.87%, the judgment provided for an assessable value of $11,170,000. Cranford argues that the indicated change in value from the motel use alone is meaningful and substantial. It did not, however, assess that increase for either of tax years 1994 or 1995.
Taxpayer argues that Cranford has failed to meet its burden of proving a substantial and meaningful change in the true value, necessary to successfully oppose the motion. Taxpayer reads 2nd Roc-Jersey Assocs. v. Morristown, 11 N.J.Tax 45 (Tax 1990), to require Cranford to prove value on the return date of the Freeze Act motion. Because Cranford offered no evidence of true value as of October 1,1994, other than the admittedly rough estimate in the expert’s certification, Taxpayer argues the motion must be granted. Taxpayer further asserts that the assessor’s failure to have increased the assessment for tax year 1995, above the 1992, 1993, 1994 assessments, or to have levied an added, or omitted/added assessment to take into account the purported increase in true value of improvements from the renovations and addition completed in November 1993, leads here, as it did in the 1994 freeze application to:
the clear inference ... that in making the ... [1995] assessment as of ... [October 1, 1994], the assessor did not take into account any change in value at all, simply having assessed the property in exactly the same amount as for the [three] prior years.
.. .The inference ... thus [being] inescapable that the [1995] assessment was not made on the basis of a change in value occurring after the prior assessing date ... [reading to the further inference that as for 1994 no change in value occurred for Tax Year 1995 and] that the opposition to the taxpayer’s [1995] Freeze Act motion was simply an after-the-fact attempt to justify the original [$14,884,100] assessment which the Tax Court had adjudged to have been too high.
[AVR Realty Co., supra, 294 N.J.Super. at 302, 683 A.2d 235.]
For the reasons expressed below, it is held that Cranford is foreclosed from asserting a claim for an increase in the assessment of the subject solely by way of its opposition to Taxpayer’s Freeze Act motion. Had the assessor levied an increased assessment on the January 10, 1995 assessment list, as he was free to do, Cranford might now defend that increased assessment against Taxpayer’s Freeze Act motion. Alternatively, Cranford might *557 have filed a petition of appeal with the county board of taxation or a direct appeal with the Tax Court, by the April 1, 1995 filing deadline, disputing the $14,884,100 assessment on the basis of the change in value, or a counterclaim in response to Taxpayer’s 1995 direct appeal, alleging the increased value from the change in use and the addition. In any of such cases, taxpayer would be on notice and in a position to proceed under the statutes to now meet Cranford’s claims. In any of such cases the court would have jurisdiction of the issue. Cranford may not, however, ignore the change in use and construction of improvements asserted to result in a value increase, and await the filing of Taxpayer’s Freeze Act motion to first affirmatively pursue the increase for tax year 1995. The Freeze Act does not extend the statutory deadlines for making or appealing assessments. Failure to adhere to those deadlines is a fatal jurisdictional defect.

Analysis

The scheme for the assessment and taxation of real property in New Jersey is designed to meet constitutional requirements of due process, to which taxpayers are entitled, McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), New York, Susquehanna and W.R.R. v. Vermeulen, 44 N.J. 491, 210 A.2d 214 (1965), as well as the need of local government for an orderly, predictable revenue stream. F.M.C. Stores Co. v. Morris Plains, 100 N.J. 418, 424-25, 495 A.2d 1313 (1985). The Freeze Act must be read in the context of that scheme.
N.J.S.A. 54:4-23 requires a municipal assessor to determine the “full and fair value” of each parcel of real property within the taxing district as of October 1st of each pretax year. The assessor’s obligation under N.J.S.A. 54:4-23
to assess local real properly at true value is mandatory and specific, and not discretionary. Switz v. Middletown Tp., 40 N.J.Super. 217, 230, 122 A.2d 649 (App.Div.1956), modified in other respects 23 N.J. 580, 130 A.2d 15, “True value cannot be established for tax purposes upon an assumption that a prior assessment, unappealed from is correct.” Appeal of Mutual Benefit Life Ins. Co., 35 N.J.Super. 113, 113 A.2d 185 (App.Div.1955). The true test of whether an assessment for a prior year is a proper assessment for a current year is whether the prior *558 assessment represents true value for the assessment year under appeal. Appeal of Kresge-Newark, Inc., 30 N.J.Super. 489, 105 A.2d 12 (App.Div.1954).
[Gehin-Scott v. Willingboro Tp., 176 N.J.Super. 642, 1 N.J.Tax 546, 551, 424 A.2d 481 (1980).]
The assessor’s duty to assess parcels in accordance with a true value determination under N.J.S.A. 54:4-23 is different for years in which a final valuation judgment has been entered by the county board or the Tax Court. Where a final judgment is entered prior to the January 10th assessment date, the assessor is bound to set the assessment for that parcel at the judgment value for each of the two tax years immediately following the judgment year. N.J.S.A. 54:3-26; N.J.S.A. 54:51A-8; Clearview Gardens Assocs: v. Parsippany-Troy Hills, 196 N.J.Super. 323, 482 A.2d 523 (App.Div.1984). In Clearview Gardens, the Appellate Division stated that “[t]he statutes specifically provide that where there has been a change in value ..., the Freeze Act valuations may be modified [only] where a complaint is filed alleging such change . . . .” Clearview Gardens, supra, 196 N.J.Super. at 329, 482 A.2d 523.
Once the true value of parcels within the taxing district are determined, N.J.S.A. 54:4-35 requires the assessor to complete and file the assessment list with the county board of taxation no later than January 10th of the tax year. The assessor must notify each taxpayer within the district of the current assessment and the prior year’s taxes for parcels owned, and further, must give public notice by advertisement of the time and place for public inspection of the list no less than ten days prior to the January 10th filing with the county board. N.J.S.A. 54:4-38. Prior to February 1st of each year, the assessor must notify by mail each taxpayer of the current year’s assessment and the preceding year’s tax liability for each parcel owned. N.J.S.A. 54:4-38.1. Thereafter, notice must be given to the taxpayer of any change made to the assessment by either the assessor’s office or the county board of taxation. Id. Each of the February 1st and “change” notices must contain information instructing taxpayer on how to appeal the assessment. Id.
*559 A taxpayer or municipality feeling aggrieved by the assessed valuation of property or discriminated against by the assessed valuation of other property must file a petition of appeal with the county board of taxation or, if the assessed value exceeds $750,000, a complaint directly with the Tax Court, on or before April 1st of the tax year. N.J.S.A. 54:3-21.[2] “Failure to file a timely appeal is a fatal jurisdictional defect.” F.M.C. Stores Co., supra, 100 N.J. at 425, 495 A.2d 1313, citing Clairol v. Kingsley, 109 N.J.Super. 22, 262 A.2d 213 (App.Div.), aff'd, 57 N.J. 199, 270 A.2d 702 (1970), appeal dismissed, 402 U.S. 902, 91 S.Ct. 1377, 28 L.Ed.2d 643 (1971) see also Hovbilt, Inc. v. Township of Howell, 138 N.J. 598, 603, 651 A.2d 77 (1994) (citing Appellate Division decision in F.M.C. Stores, supra). “It is to be assumed that the municipality will exercise its governmental responsibilities in the field of taxation conscientiously, in good faith and without ulterior motives. To that end, it is expected that it will make proper assessments, which are accorded a strong presumption favoring their validity.” F.M.C. Stores, supra, 100 N.J. at 427, 495 A.2d 1313, citing Pantasote Co. v. City of Passaic, 100 N.J. 408, 495 A.2d 1308 (1985).
“[A]ppeals before the Tax Court, pursuant to N.J.S.A. 54:3-21 [and 54:51A-1], are de novo, but the Tax Court’s right to make an independent assessment [of true value] is not boundless. [The court’s decision] must be based on the evidence before it ... and [i]t must also be consistent with the issues as framed by proper pleadings or settled presumptive rules reflecting the underlying policy that governmental action is valid.” Id. at 430, 495 A.2d 1313 (citations omitted). The Tax Court must invest the municipal assessment (or county board or Base Year judgments) with the presumption of validity, Pantasote, supra, 100 N.J. at 412-13, 495 A.2d 1308, and “may not disregard that presumption unless the taxpayer itself [or, the municipality] has adduced *560 cogent evidence that serves to overcome it.” F.M.C. Stores, supra, 100 N.J. at 431, 495 A.2d 1313. Where a claim is made that an assessment is discriminatory in relation to the common level ratio of assessed values to true values in the municipality, our Supreme Court has confirmed the obligation of the Tax Court (or county board) to revise the assessment:
A charge of discrimination implicates the constitutional right to equal protection of the law, and is the subject of particular legislative concern, see N.J.S.A. 54:51A-6 and N.J.S.A. 54:3-22 (so called Chapter 123; imposing on Tax Court and county board obligation to revise assessment when value ratio is outside statutory common level range).
[Id. at 428, 495 A.2d 1313 (citations omitted) ].
Once a final judgment is entered by the Tax Court, or the time to appeal a county board judgment has expired with no appeal being taken, the Freeze Act attaches to the Freeze Years. N.J.S.A 54:51A-8; N.J.S.A 54:3-26. Those statutes change the municipality’s rights of action. The only claim available once the freeze attaches to a Freeze Year assessment is that a “change in value” has occurred after the Base Year valuation date here, October 1, 1992 and before the Freeze Year valuation date (here, October 1, 1994). Union Terminal Cold Storage Co. v. Spence, 17 N.J. 162, 167, 110 A.2d 110 (1954). A municipality’s complaint filed to increase an assessor’s original assessment of a parcel in a Freeze Year, or timely counterclaim to that effect, becomes, once the freeze attaches to the assessment, merely an action to avoid the freeze, for either of the change in value or revaluation exceptions set out in the statute. Clearview Gardens, supra. Provided that:
[i]f a taxpayer determines that it wishes to seek a lower valuation by way of [taking or continuing an] appeal it may open itself to a claim [in that action, as in any other appeal] by the municipality that a higher assessment is, in fact warranted. Tp. of Wayne v. Robbie’s, Inc., 118 N.J.Super. 129, 135, 286 A.2d 725 (App.Div.), certif. den., 60 N.J. 351, 289 A.2d 796 (1972). The burden of proof would be upon each of the parties to demonstrate that the assessment should be respectively lowered or raised. If both fail in discharging this burden, the Freeze Act valuation, mandated by statute, would remain effective.
Clearview Gardens, supra, 196 N.J.Super. at 330-331, 482 A.2d 523.
*561 The Added Assessment Law, N.J.S.A. 54:4-63.1 to -63.11, provides for the assessment of improvements completed after October 1st of the pre-tax year. The Added Assessment Law and Omitted Assessment Law (discussed below) are exceptions to the standard April 1st limitations period of N.J.S.A. 54:3-21. “The theory of the Added Assessments Law and the Omitted Assessments Law is to provide means whereby new construction and property omitted from the tax rolls through design or inadvertence can be added and included and taxed from the appropriate date when added to the land or for the appropriate year in which it was omitted from the tax rolls. The effect of these acts is to aid in accomplishing a proper and equitable distribution of the tax burden.” In re New York State Realty & Terminal Co., 21 N.J. 90, 97, 121 A.2d 21 (1956). County board and Tax Court judgments on added and omitted assessment appeals are, just as judgments on “regular” appeals, subject to the Freeze Act. City of Newark v. Rockford Furniture Co., 4 N.J.Super. 205, 210, 66 A.2d 743 (App.Div.1949); Snyder v. South Plainfield, 1 N.J. Tax 3, 9-10 (1980).
It is undisputed that construction of the administration building and of the renovations to the former motel use structures were substantially completed on November 4, 1993. Because the completion was after October 1, 1993 and before January 1, 1994, the Added Assessment Law would have required any added value to have been assessed and, therefore taxed as of January 1, 1994 for the entire 1994 tax year, N.J.S.A. 54:4-63.2[3], and a portion of the *562 1993 tax year. The 1993 portion would, under these facts, have been of the increase in assessable value determined for tax year 1994. The 1993 and 1994 added assessments would have been placed on the assessor’s 1994 added assessment list. The 1994 added assessment list would have been completed and filed with the county board of taxation by October 1, 1994. N.J.S.A 54:4-63.5. The county board would then have examined, revised and corrected the 1994 list on or before October 10, 1994, and delivered a true record of any added taxes levied to the Cranford tax assessor. N.J.S.A. 54:4-63.5. Additional taxes on the added assessments (the full 12 months for tax year 1994 and 1 month for tax year 1993) would have been payable on November 1, 1994. N.J.S.A. 54:4-63.5 to -63.7.
Appeals from the added assessment would, assuming the November 4, 1993 completion date, have been filed on or before December 1, 1994 with the county board of taxation. N.J.S.A. 54:4-63.11. Further appeals to the Tax Court would have followed within the 45 days provided in that section. Id. As with regular “April 1st” appeals, the filing deadlines for added assessments are jurisdictional. City of Asbury Park v. Castagno Tires, 13 N.J.Tax 488, 496 (1993). By the same token, a municipality’s failure to strictly comply with the Added Assessment Law’s requirements will not only defeat appeal jurisdiction but also invalidate the assessment. American Hydro Power Partners v. City of Clifton, 11 N.J. Tax 12, 22 (1990), aff'd in part and remanded in part on other grounds, 12 N.J.Tax 264 (App.Div.1991); American Hydro Power Partners, L.P. v. City of Clifton, 9 N.J.Tax 259, 264 (1987), aff'd, 239 N.J.Super. 130, 570 A.2d 1246 (App.Div.1989). The assessor’s January 10, 1995 list set the assessment of Block 644, *563 Lot 1 at exactly the same value as in tax years 1992, 1993 and 1994. No added assessment was made in the preceding year, 1994.
The Omitted Assessment Law, N.J.S.A. 54:4-63.12 to -63.40, sets out both a regular (N.J.S.A. 54:4-63.12 to -63.30) and an alternate (N.J.S.A. 54:4-63.31 to -63.40) method whereby the county board (by judgment) or the assessor (directly) may assess any taxable property omitted from the January 10th assessment list, and thus from levy. The omitted assessment may be made in the tax year in which the omission occurred or in the next succeeding tax year. N.J.S.A. 54:4-63.12.
The “regular method” is instituted by filing a written complaint with the county board. N.J.S.A. 54:4-63.13. It may be commenced by the tax collector, taxpayer, the municipality, or on the county board’s own motion. N.J.S.A. 54:4-63.14 provides for a summary hearing on the complaint, following short notice to the taxpayer. If the board determines an omission has occurred, the assessment for the tax year of omission is fixed and levied by issuance of the judgment. N.J.S.A. 54:4-63.15. The assessment amount is entered on the assessor’s omitted assessment list for that year. Id. The statute requires the assessor to file the omitted assessment list with the county board by October 1st of each year. N.J.S.A. 54:4-63.17. By October 10th the county board examines, revises and corrects the lists, certifies them to be true, and delivers them to the tax collectors. Id. Taxes are due on omitted assessments on November 1st of the assessment year. N.J.S.A. 54:4-63.19. County board omitted assessment judgments may be appealed to the Tax Court. N.J.S.A. 54:4-63.39.
Under the “alternate method” the omitted assessment is made by the assessor directly at any time during the tax year prior to October 1st. On October 1st of each tax year, the assessor files an omitted assessment list with the county board. N.J.S.A. 54:4-63.32. The county board examines, revises, and corrects the list by October 10th, and by that date delivers a certified true copy to the tax assessor and collector. Id. The assessor then notifies the owner by certified mail, N.J.S.A. 54:4- *564 63.35, that an omitted assessment has been levied. As with the added and regular omitted assessments, taxes assessed are due November 1st. N.J.S.A. 54:4-63.36. Appeals from the assessor’s omitted assessments are made to the county board on or before December 1st. N.J.S.A. 54:4-63.39. A forty-five day limitations period applies to further appeals to the Tax Court. Id. Strict compliance with the statutory deadlines is essential to jurisdiction as well as to the validity of the tax levy. American Hydro Power Partners, supra, 11 N.J.Tax 12 and 9 N.J.Tax 259.
The Omitted Assessment Law would have permitted the assessment of any increase in value from the November 4,1993 improvements (i.e., 1/12 of the increase in assessable value for tax year 1993 and a full 12 months for 1994), after the time prescribed under the added assessment statute. New York State Realty & Terminal Co., supra, 21 N.J. at 98-99, 121 A.2d 21. “An added improvement by not being included in the tax assessment rolls pursuant to the procedure and during the time prescribed by the added assessment statutes [here by October 1, 1994 for work completed on November 4, 1993] thus becomes an omitted assessment . . . .” Id. at 99, 121 A.2d 21. Any increase in assessable value of Block 644, Lot 1 attributable to the improvements completed on November 4, 1993 became “omitted” in 1994 and so might have been assessed under the Omitted Assessment Law in 1994 (the year of omission) or 1995 (the “next subsequent year”). For tax year 1995, however, any increase in taxable or assessable value could only have been taxed by increasing the assessment on the assessor’s January 10,1995 list, or in default of an assessment increase, by a judgment of the county board of taxation, the Tax Court or an appellate court following a timely appeal by Cranford or taxpayer pursuant to N.J.S.A. 54:3-21.
In construing the Freeze Act, it has been observed: “‘[t]he mischief and the remedy proposed are plainly apparent on the face of the act. ... The act must be so construed as to suppress the mischief and advance the remedy.’ ” Newark v. Fischer, 8 N.J. 191, 200, 84 A.2d 547 (1951), quoting Randolph v. Larned, 27 N.J.Eq. 557, 560-61 (E. & A. 1876). The mischief is the “repeated *565 yearly increases in the assessed value of property, not related to or justified by any changes increasing its market value, and resulting in harassment of the taxpayer, subjecting him to the trouble and expense of annual appeals to the county tax board.” Newark v. Fischer, supra, 8 N.J. at 199-200, 84 A.2d 547.
If the statute is read to permit Cranford to challenge the assessor’s 1995 assessment for the first time in opposition to taxpayer’s motion for the freeze, it would go too far. Such an interpretation would provide Cranford an unlimited time to appeal its assessor’s action. The April 1, 1995 filing deadline, which otherwise would apply when Cranford sought to increase the assessor’s January 10 assessment of any parcel (N.J.S.A. 54:3-21), or avoid the application of the Freeze Act for judgments entered prior to that date, would be avoided. The avoidance would not further any of the Freeze Act’s purposes, and would clearly frustrate the strict conformity with statutory time limitations, which is essential “in tax matters, borne of the exigencies of taxation and the administration of local government ... [which has] [l]ong been recognized by New Jersey courts and ... has a solid policy basis.” F.M.C. Stores, supra, 100 N.J. at 424-25, 495 A.2d 1313 (citations omitted).
Taxpayer is entitled to make an application for the Freeze Act notwithstanding that no appeal for the Freeze Year was pending at the time the application is made. Union Terminal Cold Storage, supra, 17 N.J. at 167, 110 A.2d 110; Grandal Enters. Inc. v. Keansburg Bor., 292 N.J.Super. 529, 537, 679 A.2d 193 (App.Div.1996); Jack Nissim & Sons, Inc. v. Bordentown Tp., 10 N.J.Tax 464, 468-69 (1989); AKLS Realty Assocs., Inc. v. Burlington Tp., 10 N.J.Tax 1, 4 (1988). If Cranford’s reading of the Freeze Act were adopted, it would proceed here even if taxpayer had filed no 1995 appeal. The mandatory and self executing nature of the Freeze Act results in the Base Year judgment value being invested with the same presumption of correctness as attaches to an assessor’s initial assessment of property or the judgment of county board. Pantasote, supra, 100 N.J. at 412-13, 495 A.2d 1308; N.J.S.A. 54:51A-8; N.J.S.A. 54:3- *566 26. Had the assessor assessed Block 644, Lot 1 at a higher value for tax year 1995, taking into account the changes occurring after October 1, 1992 and before October 1, 1994, then Cranford’s argument would advance the statute’s purpose. Had the assessor increased the 1995 assessment, then,
there [would have been] nothing from which [Cranford] could have appealed [on April 1st] ... [In such case Cranford would not have been] ‘aggrieved’ ... [by the 1995 assessment] and therefore [would have had] no occasion to appeal [to the county board or the Tax Court].
[Wayne Tp. v. Robbie’s, Inc., 118 N.J.Super. 129, 133, 286 A.2d 725 (App.Div.) ], certif. denied, 60 N.J. 351, 289 A.2d 796 (1972).
In Wayne v. Robbie’s, supra, the assessor affirmatively increased the 1969 tax year assessment (land $107,000, building $74,700, total $181,700) above the county board judgment value for tax year 1968. For 1968, the assessor had also set the assessment at the $181,700 total and the county board had reduced that assessment to land of $37,000, buildings of $74,700, for a total of $111,700. Because the 1968 county board action had been appealed to the Division of Tax Appeals, the assessor was free to set the 1969 assessment at the higher number. N.J.S.A. 54:3-26. Permitting the municipality to defend the higher assessment in Wayne v. Robbie’s, supra, accomplished the obvious intent of the Freeze Act to except “changes in value,” and accomplished that purpose without doing violence to the orderly scheme of assessment and taxation. The taxpayer in Wayne v. Robbie’s, supra, was accorded all of the procedural safeguards built into the statutes. The municipality levied the assessment in accordance with its statutory obligations. The taxpayer received notice of the higher assessment and the opportunity to challenge it.
Cranford’s assessor set the 1995 assessment without taking into account the now alleged “change in value.” Taxpayer alone filed an April 1 appeal to reduce that assessment, as it had done for the identical assessment in 1992, 1993, and 1994. No counterclaim alleging facts sufficient to establish that a change in value had occurred and therefore seeking to increase the assessment was filed by Cranford. Once the Tax Court judgment was entered on June 2, 1995, the 1993 Base Year valuation became automatically *567 invested with the presumption of validity for the 1994 and 1995 Freeze Years. In the face of the presumption, Cranford had no formulated position on the true or assessable value of Block 644, Lot 1. It merely asserted that changes had occurred which effected value. Neither Taxpayer, the court, nor Cranford itself are now aware of the precise assessment which Cranford would seek to levy by this court’s judgment if it succeeded here. If permitted to proceed to the plenary hearing it seeks, Cranford would file and serve an appraisal expert’s report setting out an opinion of value. Taxpayer would first receive notice of this “new” opinion of value (the “old” opinion being the original assessment) at a time set, not in accordance with the assessor’s statutory mandate (N.J.S.A. 54:4-23), but at a time set by the court in a case management order. Taxpayer would be required to oppose an assessment which is not only of an unknown amount, but also one which had never been levied.
Cranford failed to file a timely appeal of the assessor’s 1995 assessment for Block 644, Lot 1. That failure is a “fatal jurisdictional defect.” F.M.C. Stores, supra, 100 N.J. at 425, 495 A.2d 1313 (citations omitted). Taxpayer’s motion is granted and the Tax Court Administrator is directed hereby to enter an interim Freeze Act judgment for tax year 1995. That judgment will be entered under the 1993 Base Year docket number. If Taxpayer intends to pursue a further reduction of the 1995 frozen assessment, the matter will proceed on that appeal.

 N.J.S.A. 54:51A-8, the "Tax Court Freeze Act,” provides:
Where a final judgment has been rendered by the tax court involving real property, the judgment shall be conclusive and binding upon the municipal assessor and the taxing district, parties to the proceeding, for the assessment year and for the 2 assessment years succeeding the assessment year covered by the final judgment, except as to changes in the value of the property occurring after the assessment date. Where those changes are alleged, the complaint shall specifically set forth the nature of the changes relied upon as the basis for the appeal. However, the conclusive and binding effect of the judgment shall terminate with the tax year immediately preceding the year in which a program for a complete revaluation of all real property within the district has been put into effect.
N.J.S.A. 54:3-26, the "County Board Freeze Act,” is substantially identical except that it requires "no request for review [of the county board determination be] taken to the Tax Court” for the freeze to apply.

 Where an appeal is taken from a change in assessment, as opposed to from the original assessment, the complaint must be filed within forty-five days of service of the notification of the change. N.J.S.A. 54:3-21; R. 8:4-1(a)(4) (1996).

 N.J.S.A. 54:4-63.2 provides:
When any parcel of real property ... contains any building or other structure which has been erected, added to or improved after October 1 in any year and completed before January 1 following, the assessor shall, after examination and inquiry, determine the taxable value of such parcel of real property as of the first day of the month following completion ... and if such parcel of real estate was not assessed as of October 1 preceding or if such value so determined exceeds the assessment made as of October 1 preceding, the assessor, shall enter the amount of such assessment of such excess, as ... an added assessment against such parcel of real property, for the subsequent tax year in a list to be known as the “Added Assessment List, 19 ..." (inserting the name of the year in which the assessment is made); *562 such entry to be made opposite the name of the owner and the description and area of the parcel of real property. In addition, the assessor shall enter in such added assessment list an assessment for that portion of the pretax year between the first day of the month following completion ... of said property and December 31 to be determined by multiplying the amount of such assessment or such excess by the number of whole months remaining in the pretax year after the completion ... of said property, and by dividing the result by 12.